UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
MARSHA LYNNE COLEMAN-ADEBAYO,                         )
                                                      )  Civil Action No. 03-2428 (PLF)
                Plaintiff,                            )
                                                      )
        v.                                            )
                                                      )
STEPHEN L. JOHNSON, Administrator,                    )
United States Environmental Protection Agency,        )
                                                      )
                Defendant.                            )
_____            )
                                                      )
MARSHA LYNNE COLEMAN-ADEBAYO,                         )
                                                      )
                Plaintiff,                            )
                                                      )
        v.                                            )  Civil Action No. 04-1399 (PLF)
                                                      )
STEPHEN L. JOHNSON, Administrator,                    )
United States Environmental Protection Agency,        )
                                                      )
                Defendant.                            )
_____            )
                                                      )
MARSHA LYNNE COLEMAN-ADEBAYO,                         )
                                                      )
                Plaintiff,                            )
                                                      )
        v.                                            )  Civil Action No. 06-1731 (PLF)
                                                      )
STEPHEN L. JOHNSON, Administrator,                    )
United States Environmental Protection Agency,        )
                                                      )
                Defendant.                            )
_____            )

PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY
JUDGMENT ON PLAINTIFF'S AMENDED COMPLAINT AND
REQUEST FOR A HEARING

On September 1, 2006, defendant filed Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing (Dkt. No. 63) (hereafter "Def. Second Reply").  On September 7, 2006, plaintiff filed Plaintiff's Motion for Leave to File a Sur-reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing (Dkt. No. 64) (hereafter "Pl. Mot. for Leave to File Sur-Reply").[1]   On December 15, 2006, the Court granted plaintiff's motion.  Accordingly, plaintiff is filing this sur-reply.[2]

ARGUMENT

A.    DEFENDANT'S NEW ARGUMENT, BASED ON *CLARK COUNTY SCHOOL DISTRICT v. BREEDEN*, CONCERNING THE ORDER TO PLAINTIFF TO WORK FROM EPA OFFICES AND HER REASSIGNMENT IN NOVEMBER 2003 IS WITHOUT MERIT

In November 2003, defendant ordered plaintiff to work in EPA offices and reassigned her to the Office of the Administrator, immediately after the mediation of plaintiff's administrative EEO complaints was terminated.  Complaint, para. 25.  Defendant now argues, for the first time, based

---

[1]All references to docket numbers in this sur-reply are to Civil Action No. 03-2428 (PLF).

[2] Defendant argued in its second reply (pp. 18-23) that plaintiff's hostile work environment claim in her Amended Complaint was untimely.  Plaintiff stated in her motion for leave to file a sur-reply that, because of defendant's timeliness argument, she intended to file a new Complaint based on allegations in two new EEO complaints in order to eliminate any questions pertaining to timeliness. Pl. Mot. for Leave to File Sur-Reply 6-7.  Plaintiff subsequently filed the Complaint (Civil Action No. 06-1731(PLF)) and, on December 13, 2006, the Court consolidated plaintiff's three Complaints. Although plaintiff continues to contend that her hostile work environment claim in Civil Action No. 04-1399 (PLF) was timely, she filed the new Complaint because the facts concerning events in 2005 and 2006, which were in the Amended Complaint, were also in EEO complaints and the time requirements for filing a federal complaint based on those EEO complaints could be fully complied with.

on "the express holding of *Clark County School District v. Breeden*, 532 U.S. 268 (2001) and its progeny,"[3] that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality." Def. Second Reply 12.

Plaintiff contends that defendant's order to plaintiff to work in EPA offices and her reassignment to the Office of the Administrator in November 2003, immediately after the mediation of plaintiff's administrative EEO complaints was terminated, constituted retaliation for all of plaintiff's numerous EEO activities. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and Request for Oral Hearing (Dkt. No. 56) (hereafter "Pl. Opp."), pp. 5, 6, 9, 16, 19-20, 35-36. These activities began in 1999 and continued until the present, including the mediation from 2001 until 2003 of plaintiff's pending EEO complaints. *Ibid.*

*Clark County* shows that all EEO activities must be considered in evaluating a retaliation claim. In *Clark County,* the supervisor who planned the transfer of the plaintiff had no knowledge of any EEO activity before the planning for the transfer occurred. 532 U.S. at 272-273. The Court stated that "there is no indication that [the supervisor who contemplated the transfer] even knew about the right-to-sue letter when she proposed transferring respondent." *Id.* at 273. In addition, "[even] if one presumes she knew about it, one must also presume that she (or her predecessor) knew almost two years earlier about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed." *Ibid.* Thus, in *Clark County*, the Court analyzed the time from when the defendant first learned of the EEO activity until when the defendant began to contemplate the

---

[3] Defendant does not cite any of the "progeny."

transfer. It is unnecessary under *Clark County* that a defendant knows that litigation will be filed.

Here, defendant obviously knew of plaintiff's extensive EEO activity starting in 1999, when plaintiff filed her first EEO complaint (EPA No. 1999-0115-HQ).[4/] This long predated the reassignment. Defendant also knew of plaintiff's involvement in the EEO mediation immediately preceding the order to work in EPA offices and her reassignment to the Office of Administration. Thus, *Clark County* directly supports plaintiff's position.

In addition, defendant's argument that plaintiff's transfer had been planned before the mediation ended (Def. Second Reply 12) is based on the declaration of Ray Spears (Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt. No. 15), Ex. 57 (hereafter "Spears Dec.")), an EPA official whom plaintiff has previously named as a discriminator (Pl. Opp. 12; First Amended Complaint, para. 34). Mr. Spears states that "[s]tarting in 2000, I participated in the internal management decision-making process on the efforts undertaken by EPA to resolve certain equal opportunity complaints filed against the Agency by Marsha Coleman-Adebayo * * *." Spears Dec., para. 2. Although he does not provide an exact date, Mr. Spears states that he made the decision to transfer plaintiff while settlement discussions were ongoing. *Id.*, para. 5. The settlement discussions had begun in approximately March 2001. Complaint, para. 23. Mr. Spears thus obviously knew of plaintiff's EEO claims well before the time when the consideration of plaintiff's reassignment began. At the very least, this is an issue of disputed fact.

Moreover, Mr. Spears' declaration only states that he contemplated, obtained approval for,

---

[4/]In addition, plaintiff previously litigated other cases in this Court. *Coleman-Adebayo v. Browner*, Civil Action No. 98-CV-926-CKK; *Coleman-Adebayo v. Browner*, Civil Action No. 98-CV-1939-CKK.

4

and initiated the reassignment of plaintiff.  Spears Dec., paras. 4-5.  It says nothing about even

contemplating the ordering of plaintiff to work in EPA offices during the mediation.  Thus,

defendant has provided no argument based on *Clark County* for ordering plaintiff to work in EPA

offices.

B.    DEFENDANT HAS CHANGED ITS ARGUMENT ABOUT "ADVERSE EMPLOYMENT
       ACTIONS"  WITHOUT  ACKNOWLEDGING  THAT  ITS  PREVIOUS  ARGUMENTS
       AND MOST OF THE CASES IT CITED ARE NO LONGER GOOD LAW

        In its first reply, defendant repeatedly argued that plaintiff must show, in order to support its

claim for retaliation, an "adverse employment action."[5]  Defendant's Reply to Plaintiff's Opposition

to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt. No. 52) (hereafter

"Def. Reply"), pp. 6, 9, 11.

        Subsequently, in *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006), the

Supreme Court rejected the arguments of defendant in this case.  The Supreme Court held that the

anti-retaliation provision in Title VII does not require a plaintiff to show that an adverse action

involving an ultimate employment decision was taken against her.  *Id*. at 2414.  Instead, the Court

held that a plaintiff need only "show that a reasonable employee would have found the challenged

action materially adverse, 'which in this case means it might well have 'dissuaded a reasonable

worker from making or supporting a charge of discrimination.'''  *Id*. at 2415.

        In its second reply, defendant cites the standard from *Burlington Northern*, as it is forced to

do.  Def. Second Reply 3-4, 6, 8-9, 11, 15 n.6.  However, defendant does not  acknowledge that its

previous arguments and most of the cases it cited in support of them are no longer good law under

*Burlington Northern*.   In fact, defendant continues to rely on these cases.  Def. Second Reply, 5, 6,

_____

[5]Defendant also referred to this as "adverse action."  Def. Reply 2, 5-9, 11, 13.

8, 14-16.

In its first reply, defendant cited *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004), for the proposition that "the request for an investigation by an independent body (as opposed to the disciplinary action that may follow) does not constitute an actionable adverse employment action." Def. Reply 6. The court in *Ware* granted summary judgment to the defendant on the discrimination and retaliation claims based on the need for the plaintiff to show an adverse employment action. The court quoted from *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." The court in *Ware* then stated that "[p]aradigmatically, this means discharge, but actions such as demotion, reassignment with significantly different responsibilities, or the loss of economic benefits can also count as adverse." *Ibid.* The court in *Ware* grouped employment actions into "categories" and discussed the facts of the case in terms of these categories. *Id.* at 72-78. This approach is directly contrary to the analysis required by *Burlington Northern*.

In its new reply, defendant still cites *Ware* multiple times. Def. Second Reply 14-16. In doing so, it fails to acknowledge that the holding in *Ware* is inconsistent with the Supreme Court's holding in *Burlington Northern*. In *Ware*, the court did not focus on "the perspective of a reasonable person in the plaintiff's position." *Burlington Northern & Santa Fe Ry. v. White, supra,* 126 S. Ct. at 2417. It did not discuss whether the acts were "likely to dissuade reasonable employees from complaining or assisting in complaints about discrimination." *Id.* at 2415.

In its first reply, defendant cited *Russell v. Prinicipi*, 257 F.3d 815, 820 (D.C. Cir. 2001), for the principle that "hypothetical or 'unactualized risk' of future adverse action is 'too ephemeral to

constitute an adverse employment action'." Def. Reply 11. Plaintiff stated in her opposition that *Russell v. Prinicipi* is no longer good law after *Burlington Northern.* Pl. Opp. 12, n. 7. Defendant now states that "nothing in *Russell v. Principi* is negatively implicated by *Burlington Northern.* Def. Second Reply 6. *Russell,* which involved discrimination rather than retaliation, concerned an allegation that a lower performance review was an adverse action. It used the standard from *Burlington Industries,* in which the Supreme Court had required a "tangible employment action." The application of this standard to a retaliation case is directly inconsistent with *Burlington Northern.*

In its first reply, defendant cited *Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001), and *Probst v. Ashcroft*, 25 Fed. Appx. 469, 2001 WL 1669397 (7th Cir. Dec. 28, 2001), for the propositions that "[s]peculative harm does not constitute adverse employment action" and "[h]ypothetical possibilities are not materially adverse employment actions." Def. Reply 9. In its second reply, defendant again argues that these cases "specifically address the issue of hypothetical harm -- i.e., such harm does not constitute an adverse action." Def. Second Reply 8. In *Aquilino*, the plaintiff contended that the denial of her request for a research assistant position after she had already been denied tenure constituted retaliation. 268 F.3d at 933, 936. The court held that defendant had failed to show an adverse employment action. *Id.* at 936. In *Probst*, the plaintiff claimed that he had been retaliated against because his employer had obtained documents in an investigation that accused him of lying under oath and misrepresenting facts, which would diminish his ability to testify because of the likelihood of being impeached. 25 Fed. Appx. at 471. The court held that the arguments about impeachment were too speculative to show a "tangible job consequence" and a "tangible adverse effect." *Id.* at 472. Again, these cases use the standard

repudiated by *Burlington Northern.*

In its first reply, defendant cited *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), a discrimination case, for the proposition that "mere investigations by plaintiff's employer cannot constitute an adverse action because they have no adverse effects on plaintiff's employment." Def. Reply 5-6. In its second reply, defendant claims that plaintiff is wrong to argue that *Burlington Northern* "negates" *Mack v. Strauss.* Def. Second Reply 14. Defendant says that "[t]he *relevant* part of *Mack v. Strauss* states that the plaintiff's allegation, *inter alia,* 'that he was investigated by management' did not rise to the level of an adverse action under *Brown v. Brody,* 199 F.3d 446, 456 (D.C. Cir. 1999)" (emphasis in original). Again, defendant continues to claim that adverse action is required in retaliation cases in direct contradiction of *Burlington Northern.*

## C.    PLAINTIFF HAS SHOWN OBJECTIVE HARM AS REQUIRED BY *BURLINGTON NORTHERN*

Defendant states that "the objective test for harm for purposes of establishing a retaliation claim is action that a reasonable employee would find 'materially adverse.'" Def. Second Reply 3. Defendant then argues that the facts set forth by plaintiff regarding her reassignment, order to report to EPA offices, and ethics investigation do not objectively satisfy this standard. *Id.,* pp. 4, 5 n. 2, 8-9, 11.

### 1.    The Reassignment and the Order to Report to Work at EPA Offices

In defendant's earlier motion for summary judgment, defendant had argued that "a plaintiff must demonstrate that he or she has suffered 'materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.'"

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt. No. 44), pp. 7, 17-18, 21-22.  Defendant cites in its second reply the standard from *Burlington Northern* that, in retaliation cases, the action should be looked at in terms of whether it might "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  126 S. Ct. at 2415.  *See* Def. Reply 3-5.  However, defendant fails to cite the specific statement in *Burlington Northern* that addresses reassignments.  *Burlington Northern* states that: "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  126 S. Ct. at 2417.  The Court gave the example that "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."  *Id.* at 2415.  Moreover, defendant fails to do the type of analysis required by *Burlington Northern* as to whether a reasonable person would have found the action enough to dissuade a person from making or supporting a charge of discrimination.

Defendant states that "[i]n fact, everything argued by Plaintiff to be adverse amounts to no more than her own subjective preferences insufficient for establishing a prima facie retaliation claim."  Def. Second Reply 4.  While *Burlington Northern* uses the objective standard of a reasonable employee (126 S. Ct. at 2415), the Supreme Court also stated that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances'" (*id.* at 2417).  It held that "a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee"

(*ibid.)* and cited the example of a working mother (*id.* at 2415).

Here, plaintiff's reassignment made at least as much difference to plaintiff as a change in work schedule is likely to mean to a working mother. Plaintiff's physician had concluded that the reassignment would cause severe harm to plaintiff's health. *See* Pl. Opp. 4, 6-7,10**.** Even if such a reassignment might not have been adverse to any other employee, it "matter[ed] enormously" to plaintiff.[6/] There is no contrary evidence but, even if there were, this would be a disputed issue of fact.

In addition to the material adversity caused by the reassignment and order to work at EPA offices, plaintiff's career was also harmed by the reassignment. *See* Pl. Opp. 10-13. In *Burlington Northern*, the Court held that a materially adverse action could exist even in the situation where there was a change of duties within the same job description. 126 S. Ct. at 2416-2417. The Court stated that "[a]lmost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee * * * from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 2416. Here, not only were the duties of the new assignment less agreeable, the reassignment also harmed

---

[6/]Subsequently, plaintiff did attempt to work in EPA offices. On December 29, 2005, she reported to an EPA office but quickly became extremely ill with light headedness, blurred vision, nausea, and an increased heart beat. *See* Pl. Opp. 37 She had to walk blocks to the EPA health unit to get assistance. The health unit wanted plaintiff to go to a hospital emergency room. *See* Pl. Opp. 38. After taking sick leave, plaintiff reported to work at EPA offices on January 3, 2006. She experienced similar symptoms and, after reporting to the health unit again, was taken by ambulance to a hospital emergency room. On these occasions, the EPA health unit and hospital emergency room found that plaintiff's blood pressure had soared but later dropped closer to normal. *See* Pl. Opp. 37-38.

plaintiff's chances for career advancement.[7]

2.    The Ethics Investigation

An investigation was conducted in 1999 concerning plaintiff's request to work on her own time on the National Summit of Africa. Fifth Coleman-Adebayo Aff., paras. 6-12. David Kling, plaintiff's second-line supervisor, had told plaintiff that he thought that the regulations allowed plaintiff to participate. *Id.*, para. 7. Plaintiff therefore signed a contract with the National Summit on Africa and began work. *Ibid.* She subsequently received numerous telephone calls at home from EPA management and counsel telling her that she was being investigated for unlawfully receiving money for the project. *Id.*, para. 8. Plaintiff, having already been selected chairman of the project, was forced to stop work because of the investigation. *Ibid.*

Defendant states that "*Burlington Northern* in no way 'negates' the precedent from this Court * * *" concerning the ethics investigation. Def. Second Reply 14. However, the Court of Appeals for the District of Columbia Circuit has explicitly stated that *Burlington Northern* does change the law in the Circuit relating to investigations. In *Velikonja v. Gonzales*, 466 F.3d 122, 124 (2006) (per curiam),[8] the court of appeals relied on *Burlington Northern* in reaching its decision on a claim involving an internal investigation:

Count I of Velikonja's first complaint also alleges retaliation in violation of Title VII. The District Court's decision, however, was issued before *Burlington Northern & Santa Fe*

_____

[7]In addition, the reassignment denied plaintiff union membership, which, from the perspective of a reasonable person in plaintiff's position, was materially adverse because it denied her the protection of union membership at a time when she most needed it. *See* Pl. Opp. 14.

[8]Plaintiff brought this case to the Court's attention in Plaintiff's Second Supplemental Brief to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and Request for Oral Hearing (Dkt. No. 65), which was filed on October 25, 2006. The Court granted plaintiff's motion to file the brief on October 31.

11

*Railway Co. v. White*, 126 S.Ct. 2405 (2006). There, the Supreme Court held that a Title VII plaintiff need not allege an adverse employment action to state a claim for retaliation, but rather must show that the employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2409. Velikonja alleges-allegations that we must accept as true at this stage of the litigation, *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C.Cir.2006)-that she was subject to a lengthy investigation, that she was prevented from receiving promotions during the pendency of the investigation, and that "the FBI has placed a cloud over [her] career, which effectively prevents her from obtaining other career-enhancing assignments for which she is highly qualified." Because a reasonable jury could find that the prospect of such an investigation could dissuade a reasonable employee from making or supporting a charge of discrimination, we reverse the dismissal of Velikonja's retaliation claim and remand for further consideration by the District Court. [brackets in original; other citation omitted]

Here, too, the investigation of plaintiff "has placed a cloud over [her] career, which effectively prevents her from obtaining other career-enhancing assignments for which she is highly qualified." At the least, the facts concerning this issue are in dispute.

## D.  DEFENDANT'S REMOVAL OF PLAINTIFF FROM THE FLEXIPLACE PROGRAM WAS RETALIATION

Plaintiff contended in her opposition to defendant's motion to dismiss that defendant's order to her to work at EPA offices and thereby remove her from the Flexiplace program under which she had been working at home violated the terms of the program. Pl. Opp. 6. Plaintiff stated that no reason was ever given as to why the Flexiplace arrangement with plaintiff was being terminated and that EPA has never contended that plaintiff failed to adhere to any requirements of the Flexiplace Program or that there were any performance or conduct concerns. *Ibid.* Defendant responded that "there is no suggestion of objectively reasonable harm as discussed in and consistent with *Burlington Northern* * * *."[2/] Def. Second Reply 11. However, the harm to plaintiff by being removed from

[2/]Defendant's argument was that the Flexiplace arrangement was temporary as shown by the fact that defendant periodically extended plaintiff's Flexiplace arrangement. Def. Second Reply 9-10. However, these extensions were materially adverse to plaintiff since they were given for only 30 to 60 days, other employees were not subject to similar periodic extensions, and it was stressful to

Flexiplace, in violation of the policy, and ordered to report to EPA offices is objectively reasonable under *Burlington Northern.* Under that decision, plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.''" 126 S. Ct. at 2415. Here, plaintiff, whose physician had diagnosed her with hypertension and had repeatedly provided his opinion to defendant that plaintiff's health would be seriously harmed by working at EPA offices and should be allowed to work from home (Pl. Ex. 1 (Dkt. No. 3), p. 1; Pl. Ex. 10 (Dkt. No. 3)), was objectively harmed under the standards of *Burlington Northern* by being ordered back to EPA offices against her physician's orders.

CONCLUSION

For the foregoing reasons, and those stated in plaintiff's earlier briefs, plaintiff submits that Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint should be denied. A proposed order is attached.

Pursuant to Local Rule 7(f), plaintiff requests an oral hearing.[10]

---

plaintiff to not know whether defendant would give her extensions until the last moment. *See* Pl. Opp. 4-5.

[10]Plaintiff has previously requested an oral hearing. The Court stated in its Minute Order of August 22, 2006, which granted plaintiff's unopposed motion for leave to file a supplemental brief to her opposition to defendant's motion to dismiss, that "[t]he Court reserves ruling on plaintiff's request for an oral hearing."

Respectfully submitted,

/s/ Michael G. Shaw

BRUCE J. TERRIS (D.C. Bar No. 47126)
MICHAEL G. SHAW (D.C. Bar No. 473008)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005-4632
(202) 682-2100 (tel)
(202) 289-6795 (fax)


Attorneys for Plaintiff

December 22, 2006

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          ) Civil Action No. 03-2428 (PLF)
              Plaintiff,                   )
                                          )
       v.                                 )
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
              Defendant.                   )
_____ )
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          )
              Plaintiff,                   )
                                          )
       v.                                 ) Civil Action No. 04-1399 (PLF)
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
              Defendant.                   )
_____ )
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          )
              Plaintiff,                   )
                                          )
       v.                                 ) Civil Action No. 06-1731 (PLF)
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
              Defendant.                   )
_____ )

ORDER

Upon consideration of Defendant's Motion to Dismiss, or Alternatively, for Summary

Judgment on Plaintiff's First Amended Complaint, and the responses thereto, it is this

_____ day of _____ 2007,

ORDERED, that the motion is DENIED.

SO ORDERED.

_____
PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE