UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| MARSHA LYNNE COLEMAN-ADEBAYO, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 03-2428 (PLF) |
| | ) |
| v. | ) |
| | ) |
| STEPHEN L. JOHNSON, Administrator, | ) |
| United States Environmental Protection Agency, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| MARSHA LYNNE COLEMAN-ADEBAYO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1399 (PLF) |
| | ) |
| STEPHEN L. JOHNSON, Administrator, | ) |
| United States Environmental Protection Agency, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| MARSHA LYNNE COLEMAN-ADEBAYO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1731 (PLF) |
| | ) |
| STEPHEN L. JOHNSON, Administrator, | ) |
| United States Environmental Protection Agency, | ) |
| | ) |
| Defendant. | ) |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT ON PLAINTIFF'S
RECENT COMPLAINT, CIVIL ACTION NO. 06-1731(PLF)
AND REQUEST FOR ORAL HEARING

INTRODUCTION

On December 27, 2006, defendant ("EPA") filed Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Recent Complaint, Civil Action No. 06-1731(PLF) (Dkt. No. 69)[1] (hereafter "Defendant's Third Motion"). That motion to dismiss is the third that defendant has filed with regard to plaintiff's three consolidated cases. This opposition is plaintiff's third opposition. The following is a procedural history of this briefing.

PROCEDURAL HISTORY

On February 6, 2006, defendant filed Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, accompanied by Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt. No. 44) (hereafter "Defendant's First Motion"). On March 27, 2006, plaintiff filed Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment and Request for Oral Hearing (Dkt. No. 47) (hereafter "Plaintiff's First Opposition"). Plaintiff included with that filing Plaintiff's First Amended Complaint. On June 2, 2006, defendant filed two pleadings. The first was Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment (Dkt. No. 52) (hereafter "Defendant's First Reply"). The second was Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint (Dkt. No. 53) (hereafter "Defendant's Second Motion").

In Defendant's Second Motion, defendant stated that plaintiff's claims in her amended complaint (Defendant's Second Motion 1-2):

> should be dismissed for failure to state a claim upon which relief may be granted (Fed. R. Civ. P. 12(b)(6)) for the reasons stated in Defendant's Motion to Dismiss, or Alternatively,

---

[1] All references to docket numbers are to numbers in Civil Action No. 03-2428.

2

for Summary Judgment filed on February 6, 2006, and Defendant's Reply filed today, June 2, 2006.  Alternatively, summary judgment should be granted to Defendant also based on the arguments presented in Defendant's Motion and Reply.

Thus, defendant based its motion to dismiss the amended complaint on its arguments in Defendant's First Motion and Defendant's First Reply.

On July 17, 2006, plaintiff submitted Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and Request for Oral Hearing (Dkt. No. 56) (hereafter "Plaintiff's Second Opposition").  Plaintiff stated that she was submitting the opposition "as a full response to EPA's two previous pleadings.  The Court therefore need not refer to Plaintiff's First Opposition, except where plaintiff explicitly refers to it.[2]  Id., p. 2.

On August 14, 2006, plaintiff filed Plaintiff's Supplemental Brief to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and Request for Oral Hearing (Dkt. No. 61), which was accepted by the Court on August 22.

On September 1, 2006, defendant filed Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing (Dkt. No. 63).

On September 7, 2006, plaintiff filed Plaintiff's Motion for Leave to File a Sur-reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing (Dkt. No. 64)

---

[2]Plaintiff also stated that the Statement of Material Facts as to which There Is a Genuine Dispute and a Rule 56(f) affidavit that were submitted with plaintiff's original opposition were superseded by new versions filed with the new brief.

(hereafter "Pl. Mot. for Sur-reply"). The Court granted the motion on December 15. Plaintiff filed

her sur-reply on December 22. Plaintiff's Sur-reply to Defendant's Reply to Plaintiff's Opposition

to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended

Complaint and Request for a Hearing (Dkt. No. 68) (hereafter "Pl. Sur-reply").

On October 25, 2006, plaintiff filed Plaintiff's Unopposed Motion and Memorandum for

Leave to File Plaintiff's Second Supplemental Brief to Plaintiff's Opposition to Defendant's Motion

to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and

Request for Oral Hearing (Dkt. No. 65) with the attached second supplemental brief. The Court

accepted the second supplemental brief on October 31.

As stated above, defendant filed its third motion to dismiss on December 27, 2006.

In this response to Defendant's Third Motion, plaintiff does not restate the arguments she

made in her earlier briefs, unless the same issues were argued again in Defendant's Third Motion.

However, since defendant's motion requests that all three consolidated cases be dismissed (or that

summary judgment be granted to defendant in all three consolidated cases), all the briefs mentioned

above are relevant. Accordingly, plaintiff incorporates by reference all the briefs mentioned above.[3]

ARGUMENT

I

PLAINTIFF HAS NOT ATTEMPTED TO REVIVE HER REASONABLE
ACCOMMODATION CLAIM[4]

Defendant states that "[i]n filing multiple, nearly duplicative complaints, Plaintiff repeatedly

---

[3]Defendant has also incorporated by reference its preceding briefs. *See* Defendant's Third Motion 12, 17.

[4]This Court has referred to plaintiff's reasonable accommodation claim as her "disability discrimination claim." Opinion, November 30, 2005 (Dkt. No. 38), pp. 6, 9.

4

attempts to revive a disability claim which has been rejected thrice - once by a jury and more recently

twice by this Court" (citations omitted).  Defendant's Third Motion 2.

Plaintiff has twice addressed her reasonable accommodation claim.  In Plaintiff's Second

Opposition, plaintiff stated (p. 2, n. 1):

> The only separate argument that EPA includes in its motion to dismiss the amended
> complaint concerns plaintiff's Rehabilitation Act claim.[5/]  EPA states that "[p]laintiff just
> simply ignores this Court's dismissal of her Rehabilitation Act claim (essentially twice) and
> importantly the rationale underpinning that dismissal in asserting the claim yet again in her
> First Amended Complaint."  Similarly, in its reply, EPA argues that plaintiff "completely
> ignore[d]" the Court's ruling on her disability claim.  That is incorrect.  In her opposition,
> plaintiff acknowledged that the Court had granted EPA's motion for summary judgment as
> to plaintiff's claim of disability discrimination in her first complaint and that her disability
> claim in the second complaint is barred by collateral estoppel.  Plaintiff stated that she was
> including the disability claim in her amended complaint "only in order to preserve plaintiff's
> right to appeal the Court's decision."  [citations omitted]

Moreover, as to plaintiff's "recent" complaint that is directly at issue in this opposition brief, plaintiff

has not included a reasonable accommodation claim, only claims of retaliation and hostile work

environment.  Complaint, paras. 64-73.  Thus, defendant is incorrect in stating that plaintiff

"repeatedly attempts to revive a disability claim which has been rejected."

II

PLAINTIFF NEEDED TO FILE THE THREE COMPLAINTS IN ORDER
TO PROTECT HER LEGAL RIGHTS

Defendant states that "Plaintiff has inexplicably filed substantially overlapping Complaints

* * *."[6/]  Defendant's Third Motion 3.  In addition, defendant states that "Plaintiff has filed these

---

[5/]This is the same claim as plaintiff's reasonable accommodation claim under the Rehabilitation Act.

[6/]Defendant incorrectly attempts to characterize plaintiff's complaints as "[b]esides for a string of
unrelated allegations which objectively do not rise to the level of material adverse actions, the crux of
plaintiff's recent Complaints is based solely on the denial of her desired accommodation to work from
home full-time with the added caveat of never having to enter an Environmental Protection Agency
("EPA") facility for any period of time" (citation omitted).  Plaintiff's complaints include claims of

substantially overlapping complaints with no explanation or reason as to the necessity of doing so, and thus, in seemingly [*sic*] disregard to any effort for efficient litigation of this suit." *Id.*, p. 3, n. 2.

Plaintiff's original Complaint (Civil Action No. 03-2428 (PLF)), was filed on November 24, 2003,[7] alleging reasonable accommodation and retaliation claims. Jurisdiction was based on EEO administrative complaints filed in 1999-2001. The Complaint also included retaliatory actions in 2003 which plaintiff claimed were like or reasonably related to the allegations in the EEO complaints of 1999-2001. *See, e.g.*, Plaintiff's Reply Memorandum in Support of Her Motion for a Preliminary Injunction and Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment (Dkt. No. 19), pp. 5-9. On July 26, 2004, the Court denied plaintiff's motion for a preliminary injunction, granted summary judgment to defendant on plaintiff's reasonable accommodation claim (Opinion (Dkt. No. 28), p. 20; Order (Dkt. No. 29), p. 1), dismissed plaintiff's entire retaliation claim (Opinion, p. 11; Order, p. 1), and dismissed the case (Order, p. 2).

Plaintiff filed a motion to alter or amend the judgment. Dkt. No. 30. In that motion, plaintiff did not request that the Court reconsider its decision on the retaliation claim as to the events in 2003. However, plaintiff did request that the Court reconsider its decision on the retaliation claim as to the events in 1999-2001. On November 30, 2005, the Court issued its opinion on plaintiff's motion to alter or amend judgment, which resulted in the Complaint no longer being dismissed and the

_____

retaliation and hostile work environment based on defendant's actions occurring in 1999-2001, defendant's actions in 2003 and 2004 related to ordering her again to return to work in EPA offices and reassigning her, and defendant's actions in 2005 and 2006 related to ordering her again to return to work in EPA offices. Because of the Court's dismissal of plaintiff's disability claim, there are no allegations related to a claim of failure to provide reasonable accommodation. *See* p. 5 above.

[7]Plaintiff filed a motion for a temporary restraining order at the same time.

retaliation claim based on the 1999-2001 events being reinstated.[8] Dkt. No. 38.

During the time that those actions were taking place, plaintiff filed EEO administrative complaints in February 2004 based on the retaliatory events in 2003.[9] When those EEO complaints had been exhausted, plaintiff filed Civil Action No. 04-1399 (PLF) on August 17, 2004. Thus, plaintiff filed the 2004 Complaint in order to be able to establish her claim as to retaliation in 2003. The end result was that the consolidated cases of Civil Action Nos. 03-2428 (PLF) and 04-1399 (PLF) now included a claim of retaliation for the events in 1999-2001 and 2003. Thus, the second complaint was necessary in order to include the 2003 retaliatory actions in this litigation.

On March 27, 2006, plaintiff amended her Complaint in Civil Action No. 03-2428 (PLF). Plaintiff explained that she was amending the Complaint because "[p]laintiff did not originally include a claim of a hostile work environment in the complaint filed in this Court. Since EPA is now arguing that plaintiff's retaliation claims were not adverse actions, and since plaintiff's hostile work environment claim has been exhausted, plaintiff is amending her 2003 Complaint to include a hostile work environment claim." Plaintiff's First Opposition 32.

On October 6, 2006, plaintiff her third Complaint. Civil Action No. 06-1731 (PLF). The purpose in filing that Complaint was to include a fully-exhausted hostile environment claim based on events that had occurred in 2005 and 2006. In her motion for leave to file a sur-reply, plaintiff

---

[8]Plaintiff had also requested that the Court reconsider its decision to grant summary judgment to defendant on the discrimination claim, which the Court refused to do. As stated above (p. 5), plaintiff kept the discrimination claim in her subsequent Complaint in order to preserve her right to appeal .

[9]Plaintiff notes that it would have been impossible to have exhausted her administrative remedies for the 2003 retaliatory actions before filing the original Complaint since the original Complaint was filed in order to allow plaintiff to seek a temporary restraining order to prevent plaintiff being forced to return to EPA offices within a few days. *See* Plaintiff's Brief in Support of Her Motion for a Preliminary Injunction (Dkt. No. 14), p. 1.

stated the reason for filing the new complaint (Pl. Mot. for Sur-reply 7):

> In its reply [to plaintiff's opposition to defendant's motion to dismiss the amended complaint], defendant argues that "the hostile work environment claim * * * is legally deficient in two ways: it was untimely raised in this civil action and it fails to state a claim upon which relief may be granted."  If the Court agrees with defendant as to the timeliness of plaintiff's allegations, plaintiff would lose entirely her hostile environment claims that were in the two EEO complaints.  Therefore, plaintiff intends to file a new Complaint in this Court based on the allegations in the two EEO complaints and a motion to consolidate the new case with the present case.  There will be no question of the timeliness of filing the new Complaint since the 90-day period for filing a judicial complaint after the dismissal of the EEO complaints will not expire until October 9, 2006.  In the new Complaint, plaintiff will include earlier incidents of hostile work environment.  [citation omitted]

Thus, plaintiff had good reasons for filing the three Complaints in this case in order to protect her rights as to a series of actions taken by defendant against her.

III

DEFENDANT DID NOT PROVIDE PLAINTIFF WITH AN OPPORTUNITY TO BE HEARD
AS TO WHY SHE SHOULD HAVE BEEN ALLOWED TO CONTINUE
TO WORK AT HOME

Defendant states that (Defendant's Third Motion 7):

> [I]n a clear disregard to the record in this case, Plaintiff, in her amended complaint to Civil Action No. 03-2428 (PLF), alleged that the EPA "never requested that plaintiff provide medical documentation as to why she must continue to work from home" and, prior to November 6, 2003, "did not provide plaintiff with an opportunity to be heard regarding the reasons why it is essential, in order to prevent serious injury to plaintiff's health, that she be allowed to continue to work at home."

Defendant then states that "[t]he blatant untruthfulness of these allegations is evidenced by the following" and lists 23 instances that defendant claims are evidence of this "untruthfulness."  *Id.*, pp. 7-11.

Initially, plaintiff notes that defendant is raising this argument based on a statement in plaintiff's Amended Complaint.  Defendant never raised this argument in Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint, which

specifically concerned the Amended Complaint.  Defendant's instant motion concerns plaintiff's October 2006 Complaint, not the March 2006 Amended Complaint.  In any event, notwithstanding defendant's inappropriate argument in its recent brief, the argument is without basis.

Plaintiff made the statements in the Amended Complaint that were at issue as part of the facts pertaining to defendant's actions in November and December 2003 in ordering plaintiff to return to an EPA office after having worked from home since 2001.  Plaintiff alleged that she had applied in May 11, 2000, providing medical documentation, to work at home under the AWS policy but the application had been denied.  Amended Complaint, para. 18.  She said that, later, defendant allowed her to work at home under the regular Flexiplace program.  *Id.*, para. 19.  She alleged that EPA refused to extend her Flexiplace authorization in the same manner as other employees, thus causing her severe stress as the end of each extension got closer.  *Id.*, para. 21.  She stated that, in a letter dated August 7, 2003, she was informed that the Flexiplace arrangement was being extended for an additional 120 days which would have been until December 7, 2003.  *Id.*, para. 22.

Plaintiff alleged that, nevertheless, she received a letter dated November 6, 2003, stating that she was expected to report to work on December 1, 2003, and that her Flexiplace arrangement would expire on November 29, 2003.  Amended Complaint, para. 25.  Plaintiff stated that her removal from the Flexiplace arrangement was in direct violation of the Flexiplace procedures as specified in the National Collective Bargaining Agreement for Flexiplace.  *Id.*, para. 28.

Thus, when plaintiff stated that EPA did not provide her with an opportunity to be heard, it was in the context of defendant removing her from the Flexiplace arrangement under which she had worked at home since 2001 and ordering her to return to EPA offices in November 2003.  In other words, even though defendant knew that plaintiff had medical problems and knew that she had

9

applied on multiple occasions to work from home because of those medical problems, defendant did not give her an opportunity in 2003 to show that her health would be severely harmed by having to return to EPA offices.

As noted above, defendant stated that plaintiff alleged in her Amended Complaint "that the EPA 'never requested that plaintiff provide medical documentation as to why she must continue to work from home.'" Defendant's Third Motion 7. The exact allegation in the Amended Complaint was: "From 2000 until December 22, 2003, EPA never requested that plaintiff provide medical documentation as to why she must continue to work from home." Amended Complaint, para. 31. Plaintiff acknowledges that the phrase "from 2000" is incorrect. Plaintiff certainly knew that she had applied in May 2000 to be allowed to work from home and had provided medical documentation with the applications. *See* Amended Complaint, para. 18 ("On May 11, 2000, plaintiff applied under the Alternate Work Space Policy ("AWS") to work at home associated with work in her officially assigned work site and twice provided medical documentation to support her application").

Of the 23 items listed by defendant to support its argument that plaintiff had misrepresented that defendant had "'never requested that plaintiff provide medical documentation as to why she must continue to work from home,'" the first 21 took place in 2000 and 2001. The last two items took place after plaintiff had already been ordered in 2003 to return to EPA offices. The 22d item was plaintiff's initial Complaint in this Court of November 24, 2003, and the 23d was the request from defendant to plaintiff to submit additional medical information of December 22, 2003, which was the date plaintiff used in the Amended Complaint. Therefore, defendant had not requested and plaintiff had not provided any medical information since May 2001. The incorrect phrase "from 2000" does not change plaintiff's central point that defendant had allowed her to work at home since

10

2001, but ordered her in November 2003 to return to EPA offices without allowing her the opportunity to show, based on current information, the harm to her health that would occur. Instead, if defendant considered her health at all, the latest information it had was from 2000 and 2001.

IV

PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS TIMELY
AND STATES A CLAIM

Defendant states that "Plaintiff's hostile work environment claim should be dismissed for those reasons stated in Defendant's recent Motions and Replies filed in Civil Action No. 03-2428 (PLF) and Civil Action No. 04-1399 (PLF) and incorporated herein by reference." Defendant's Third Motion 12. Plaintiff shows below that these reasons are erroneous.

A.      PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM HAS BEEN EXHAUSTED

Defendant argues that "Plaintiff's Hostile Work Environment Claim is Time-Barred." Defendant's Third Motion 12-13. Defendant states that "the EPA dismissed Plaintiff's administrative complaint (EPA File No. 2001-0014-HQ) in which she initially alleged a hostile work environment claim based on retaliatory acts." Defendant's Third Motion 12. As plaintiff explained above (pp. 6-7), plaintiff's administrative claims from 1999-2001 are in Civil Action No. 03-2428 (PLF) because of the Court's Opinion on November 30, 2005, which reinstated plaintiff's retaliation claim based on the 1999-2001 events. The issue is not whether the administrative claim was dismissed by defendant but whether plaintiff could file a fully exhausted hostile environment claim in 2006 that included events from 1999 to 2006.

As stated above (pp. 7-8), plaintiff filed Civil Action No. 06-1731 (PLF) for the purpose of including a fully-exhausted hostile environment claim based on events that had occurred in 2005 and 2006. Plaintiff provided an extensive argument in her opposition to defendant's motion to dismiss

11

the Amended Complaint showing that the hostile work environment claim was properly before the Court. *See* Plaintiff's Second Opposition 31-39. However, she filed the new Complaint in order to protect herself should the Court agree with defendant's argument that the claim had not been exhausted. Because of filing Civil Action No. 06-1731 (PLF), there is no question that the hostile environment claim based on events in the 2006 administrative complaint is fully exhausted.

Thus, the issue is whether the events of 1999-2001 can be included along with the events of subsequent years. Plaintiff addressed that issue in her opposition to defendant's motion to dismiss the Amended Complaint. Plaintiff's Second Opposition 31-39.

Defendant admits that plaintiff's EEO complaint in 2001 "alleged a hostile work environment claim based on retaliatory acts." Defendant's Third Motion 12. As plaintiff showed in her previous opposition brief (Plaintiff's Second Opposition 32), the Supreme Court stated in *AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002)):

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. * * * The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

The Court in *Morgan* similarly stated that hostile work environment claims "are based on the cumulative effect of individual acts" (*ibid*.) that, collectively, "constitute 'one unlawful employment practice'" (*id*. at 117). *See also* Runkle v. Gonzales, 391 F. Supp. 2d 210, 228 (D.D.C. 2005).

The Court in *Morgan* further stated (536 U.S. at 118):

> The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge <u>within 180 or 300 days of any act that is part of the hostile</u>

work environment.  [emphasis added]

The Court said that "[s]ubsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole" and that the "entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.

The Supreme Court in *Morgan* rejected the "continuing violation" theory for claims of discrimination and retaliation.  536 U.S. at 114.  However, the "continuing violation" theory still applies to hostile work environment claims.  In *Singletary v. District of Columbia*, 351 F.3d 519, 527, n. 8 (D.C. Cir. 2003), the Court of Appeals for the District of Columbia Circuit quoted the statement in *Morgan* that "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period" (ellipses in original).  The court of appeals then stated that "the district court [in *Singletary*] appeared to recognize the applicability of this rule, citing *Morgan* as holding that, although 'not appropriate for claims of discrete discriminatory or retaliatory acts,' the 'continuing violation theory' remains 'applicable to charges alleging a hostile work environment.'"  *Ibid.*

In *Graham v. Gonzales*, D.D.C., Civil Action No. 03-1951 (RWR), 2005 WL 3276180, at *7, the district court analyzed *Morgan* and *Singletary*:

> Plaintiff has pled that continuing violations created a hostile work environment.  "A hostile work environment is composed of a series of separate acts that collectively constitute one unlawful employment practice."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 117.  Where, as here, a plaintiff has alleged " 'an act contributing to the claim [that] occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"  *Singletary*, 351 F.3d at 526-27 (quoting *Morgan*, 536 U.S. at 117).  Provided a plaintiff can establish that the acts are a part of the same actionable unlawful employment practice of hostile environment, acts that fall outside

13

the limitations period may be considered as contributing incidents to the hostile environment claim. *See id.* at 527-28 (citing and quoting *Morgan*, 536 U.S. at 117, 120-21). Furthermore, the act that falls within the filing period does not have to be the last act in the series that establishes a hostile work environment. *Morgan*, 536 U.S. at 117 ("Subsequent events ··· may still be a part of the one hostile work environment claim · · · ·"). Thus, although Graham's constructive discharge claims cannot stand alone to support a Title VII race or retaliation claim because he did not exhaust his mandatory administrative remedies, the facts that plaintiff would have used to support his constructive discharge claims may be considered as incidents supporting the retaliatory hostile work environment claim. Acts prior to, contemporaneous with, and subsequent to the IOB episode may be considered in determining whether the cumulative effect of the acts constitutes a hostile work environment created to harass plaintiff in retaliation for his participation in protected activities, as plaintiff alleges. Further, assuming that all the facts marshaled to support the retaliatory hostile work environment claim are sufficiently distinct from the nucleus of facts concerning the IOB incident to avoid res judicata problems, there is no bar to considering even the IOB incident itself as one of the series of separate acts that collectively constitute the hostile environment that violates Title VII. Because the complaint alleges facts sufficient to support a claim of a hostile work environment in retaliation for engaging in protected activities, defendants' motion to dismiss will be denied as to Count Three.

In accordance with *Morgan* and *Singletary*, plaintiff has filed a fully-exhausted hostile work environment claim that was filed within 180 days of "any act" that was part of "one unlawful employment practice." Thus, the only issue is whether all of the events from 1999 to 2006 were part of "one unlawful employment practice."

Defendant states that plaintiff's hostile work environment claim in EEO complaint 2006-0048-HQ "is based on two discrete incidents occurring on December 29, 2005, and January 3, 2006. Defendant's Third Motion 14. However, plaintiff alleged in that administrative complaint that she was alleging a hostile work environment and retaliation, including that "I have suffered retaliation and harassment for engaging in legally protected activities, and for other reasons set forth herein. These continuing acts of retaliation include actions that occurred on December 29, 2005 and January 3, 2006. It is noted that this claim of a hostile work environment deals with a continuing practice by the Agency and its managers * * *." Pl. Ex. 86 (attached), p. 2.

Moreover, plaintiff's 2006 judicial Complaint did not base its jurisdiction on just EEO complaint 2006-0048-HQ. It also included EEO complaint 2006-0019-HQ. That complaint stated that (Pl. Ex. 87 (attached), p. 4):

> This complaint addresses the Agency's failure to declare me disabled under the Rehabilitation Act, to provide me reasonable accommodation under the Rehabilitation Act, and to harass and retaliate against me because of a 2000 jury verdict in my favor, current litigation in federal court, two appearances before Congress, leadership and passage of federal legislation to protect victims of discrimination, and continued support for victims of discrimination. In addition, the Agency has attempted to intimidate me into resigning or entering into a settlement to leave the Agency.
>
> Despite extensive medical documentation by my cardiologist, neurologists, ophthalmologist, neuro-ophthalmologist and internist, the Agency has denied me the status of disabled. I have had to live under the threat of returning to a hostile work environment that would endanger my health.

The complaint then alleged that the actions of the reasonable accommodation coordinator and plaintiff's supervisor were part of the hostile work environment and retaliatory actions.[10]  *Id.*, pp. 4-5. Plaintiff also stated that the complaint concerned defendant's acts of "harass[ment] and retaliat[ion]." *Id.*, p. 4.

In addition, in her 2006 judicial Complaint, plaintiff stated that "[t]he incidents described above in paragraphs 18-44, which took place during the period from 2000 to 2004, are included in plaintiff's claim of a hostile work environment, as alleged in EEO Nos. 2006-0019-HQ and 2006-0048-HQ and are part of a continuing hostile environment which began in 1999 and has continued until the present." 2006 Complaint, para. 45. She also stated that "incidents described above in paragraphs 48-51, which took place during the period from 2005 to 2006, are included in plaintiff's claim of a hostile work environment, as alleged in EEO No. 2006-0019-HQ and are part

---

[10]/Plaintiff also included allegations of discrimination in the 2006 EEO complaints but did not include those allegations in her judicial third Complaint.

of a continuing hostile environment which began in 1999 and has continued until the present." *Id.*, para. 52.   Plaintiff also stated that "[t]he incidents described above in paragraphs 53-61, which took place during the period from 2005 to 2006, are included in plaintiff's claim of a hostile work environment, as alleged in EEO No. 2006-0048-HQ and are part of a continuing hostile environment which began in 1999 and has continued until the present." *Id.*, para. 62.   Thus, plaintiff's 2006 judicial complaint based her hostile work environment claim on both EEO complaints and on events from 1999 until the present.

B.     THE EVENTS COMPRISING PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM
        ARE SEVERE AND PERVASIVE

Defendant argues that the actions on December 29, 2005, and January 3, 2006, were not sufficiently severe or pervasive as to prove a hostile work environment.  Defendant's Third Motion 14.  However, defendant cannot isolate single incidents to try to disprove the allegation of an overall hostile work environment.   It is, of course, the totality of all incidents that must be shown to be severe or pervasive.  As defendant quotes from *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998) (Defendant's Third Motion 15), a court must "determine whether an environment [is] sufficiently hostile or abusive by looking at all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

Plaintiff showed in her second opposition that defendant's actions had been severe and pervasive.  Plaintiff's Second Opposition 31-39.  After describing the events that are in her hostile work environment claim, she summarized them by stating (*id.*, p. 39):

> EPA argues that none of the actions described above are sufficiently severe or pervasive "to alter the conditions of an individual's employment." Plaintiff submits that actions which repeatedly affect an employee's job performance, career opportunities, protections of union

16

membership, and, above all, health, are sufficiently severe and pervasive. At the very least, the evidence is sufficient to be decided by the jury. [citation omitted]

Plaintiff continues to rely on those arguments.

As to the events on December 29, 2005, and January 3, 2006 (in EEO Complaint 2006-0048-HQ), defendant states that "Plaintiff admits that she was provided information for purposes of contacting the health unit, and on both occasions, apparently received adequate attention from that unit. Further, Plaintiff was able to obtain appropriate medical attention on her own accord apparently without need for additional managerial attention or assistance" (citations omitted). Def. Mot. 14. This characterization is directly inconsistent with the events on those days. On December 29, plaintiff reported to the EPA office after having been ordered to do so by defendant. Plaintiff's First Opposition, Pl. Ex. 61 (Fifth Affidavit of Marsha Coleman-Adebayo (hereafter "Fifth Coleman-Adebayo Aff.")), para. 16. Around noon, "[s]he began to experience light headedness, blurred vision, nausea, and an increased heart beat." *Ibid*. She sought medical assistance and spoke with her team leader. *Ibid*. However, the only assistance she received was the telephone number of the health unit and directions on how to get there. The health unit was in another building several blocks away. She was not provided any assistance on getting to the health unit and had to walk there herself. The walk took approximately 15 to 20 minutes. *Ibid*. The health unit determined to call an ambulance to take her to the hospital emergency room. *Ibid*. When plaintiff asked the health unit to call her office to see if someone could accompany her to the hospital, the health unit was told by the acting director of the office that no one was available to accompany her. *Ibid*. The extremely limited assistance of plaintiff's management placed her in the dangerous medical situation of having to walk on her own to the health unit. The fact that she received adequate attention at the health unit does not substitute for the inadequate assistance she received before she arrived there.

17

Then, after taking sick leave, plaintiff returned to the office on January 3, 2006. Fifth Coleman-Adebayo Aff., para. 17. She again became ill with symptoms similar to what she had experienced on December 29. *Ibid*. Again, plaintiff asked for assistance and none was provided. *Ibid*. Instead of walking, this time plaintiff took a taxi by herself to the health unit. *Ibid*. After taking plaintiff's blood pressure, the health unit "implemented emergency services, including administering oxygen by mask," and had an ambulance take her to the Howard University emergency room. *Ibid*. This time, plaintiff had received essentially no assistance from her management and had again been placed in an extremely dangerous medical situation. Again, the fact that she later received adequate attention at the health unit is irrelevant.

V

## PLAINTIFF'S CLAIM OF A HOSTILE WORK ENVIRONMENT PROPERLY INCLUDES RETALIATORY EVENTS

Plaintiff has two claims in her 2006 Complaint: retaliation and hostile work environment. For the retaliation claim, plaintiff stated that "Plaintiff's claim of retaliation is based on retaliatory incidents that took place during 2005-2006, which were alleged in EEO complaints 2006-0019-HQ and 2006-0048-HQ and in paragraphs 48-60 above." 2006 Complaint, para. 64. For the hostile work environment claim, plaintiff stated that (para. 71):

> Plaintiff's claim of hostile work environment is based on retaliatory incidents that took place during the period from 2005 to 2006, which were alleged in EPA Case Nos. 2006-0019-HQ and 2006-0048-HQ and described above in paragraphs 48-61 and in the incidents described above in paragraphs 17-44, which took place during the period from 1999 to 2004. These incidents are part of a continuing hostile environment which began in 1999 and has continued until the present.

Thus, plaintiff is alleging retaliatory incidents as part of both claims.

Defendant argues that "certain courts" have held that allegations of retaliation are "separate

18

and distinct claims" and "cannot form the basis of a hostile work environment claim" and that "[p]laintiff's attempt to bootstrap her discrete allegations of retaliation to her broader hostile work environment claim should similarly be dismissed." Defendant's Third Motion 16. The Court of Appeals for the District of Columbia Circuit has held in *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006), citing *Singletary v. District of Columbia, supra*, 351 F.3d at 526 , that "[i]n this circuit, a hostile work environment can amount to retaliation under Title VII."

The opposite is also true. In *Noviello v. City of Boston*, 398 F.3d 76, 82 (1st Cir. 2005), the plaintiff had reported to her management that her immediate supervisor had "forcibly unhooked [her] brassière, ripped it from her body, hung it on the van's outside mirror, and bellowed a crude sexual remark to a fellow employee on the street." There was an investigation and the immediate supervisor was suspended for a week. *Ibid*. The plaintiff alleged that, after she had made the report and the supervisor was suspended, she was subjected to harassing incidents by co-workers. *Ibid*. The district court concluded that the sexual harassment claim failed because of timeliness and because the defendant had responded to the assault by the supervisor by suspending him. *Id.* at 83. As to the retaliation claim, the district court held that the plaintiff had been subjected to a "series of distasteful, unpleasant, non-empathetic acts ··· by a series of subordinate officials" but that the retaliation claims failed "because none of the incidents was an 'adverse employment action [ ]' that bore directly upon the terms and conditions of the plaintiff's employment"[11/] (brackets in original). *Id.* at 84.

The court of appeals in *Noviello* stated that "[m]ost hostile work environments are bred from

---

[11/]Plaintiff notes that the law on "adverse employment action" has subsequently been substantially changed by the decision of the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006). Plaintiff addressed this decision in earlier briefs. *See* Plaintiff's Second Opposition 7-9; Pl. Sur-reply 5-8.

an ongoing series of harassing incidents." 398 F.3d at 84. However, there, the plaintiff's claim of

a hostile work environment was not based on a series of harassing incidents but was "based

singularly upon [the plaintiff's immediate supervisor's] assault." *Ibid*. The court cited *Faragher*

*v. City of Boca Raton*, 524 U.S. 775, 788 (1998), in stating that "a single act of harassment may, if

egregious enough, suffice to evince a hostile work environment." *Ibid*.

>    The court concluded that (398 F.3d at 93):
>
>    Even with these nuances in mind, we conclude that the evidence in this case, viewed in the
>    light most favorable to the plaintiff, would permit -- although certainly not compel -- a
>    reasonable jury to find that the plaintiff was subjected to a retaliation-based hostile work
>    environment. In reaching this conclusion, we take into account the relative ubiquity of the
>    retaliatory conduct, its severity, its natural tendency to humiliate (and, on occasion,
>    physically threaten) a reasonable person, and its capacity to interfere with the plaintiff's work
>    performance.

Thus, the court opined that a hostile work environment can be based on "pervasive retaliation"

because of protected actions. It found that a single event, which the court found could have occurred

because of retaliation, could also be considered as a hostile work environment. Similarly, a series

of incidents that occurred because of retaliation could also make up a hostile work environment.

>    A claim of retaliation requires that a plaintiff must "show that a reasonable employee would

have found the challenged action materially adverse, 'which in this context means it well might have

'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*

*Northern and Santa Fe Ry. Co. v. White*, *supra*, 126 S. Ct. at 2415. The Court also stated that "the

significance of any given act of retaliation will often depend upon the particular circumstances.

Context matters. 'The real social impact of workplace behavior often depends on a constellation of

surrounding circumstances, expectations, and relationships which are not fully captured by a simple

recitation of the words used or the physical acts performed'" (citation omitted). *Ibid*.

The focus is on the impact of the retaliatory act and the relation of the act to a protected activity by the plaintiff. In contrast, the focus of a claim of hostile work environment is on the severity and pervasiveness of hostile acts. *See* p. 20 above. Some acts may support both kinds of claims.

It would be illogical to allow a particular incident to be considered only as either retaliation or as part of (or the entirety of, as in *Noviello*) a hostile work environment. For example, a plaintiff might claim that she had been retaliated against by an act that satisfied the standard set forth in *Burlington Northern*. The court might dismiss such a claim of retaliation by finding either that the act did not meet the standard of *Burlington Northern* or was not motivated by retaliation. If the court found that the act was not motivated by retaliation, according to defendant's argument here, the court could not consider the acts as relevant to any other claim that the plaintiff might have. However, even if a series of offensive and hostile acts taken against the plaintiff were not found to be based on the plaintiff's EEO activity, there is no possible reason why these acts should not be considered in determining a hostile environment claim, together with any acts which occurred before the plaintiff's EEO activity occurred. Similarly, if the court finds that the acts occurring after the plaintiff's EEO activity were retaliatory, there is no reason why these acts may not also be considered together with any pre-EEO offensive and hostile acts to determine whether the plaintiff has shown a hostile work environment. The totality of the offensive and hostile acts should logically be considered in deciding whether the plaintiff has been subjected to a hostile work environment, whether or not some of these acts might also have been retaliatory.

Defendant cites *Edwards v. U.S.E.P.A.*, 456 F. Supp. 2d 72 (D.D.C. 2006), and *Keeley v. Small*, 391 F. Supp. 2d 50 (D.D.C. 2005), for the proposition that a plaintiff cannot "use [a] series

of incidents alleged as retaliation to serve as [the] basis for [a] broader hostile work environment claim." Defendant's Third Motion 16. However, neither case supports this conclusion. In both cases, this Court looked at the totality of the evidence and evaluated this evidence separately for the retaliation claims and the hostile work environment claim. Each court considered each of the retaliation claims and found the total evidence did not satisfy requirements as to adverse action, causation, and/or rebuttal of proffered non-discriminatory reasons for the actions. *See* 456 F. Supp. 2d at 86-95; 391 F. Supp. 2d at 41-50. Each court, separately from the retaliation claims, considered the total evidence as to the hostile work environment claim and found it to be lacking as to severity and pervasiveness. *See* 456 F. Supp. 2d at 97 ("'plaintiff's reliance on discrete acts that are neither severe and pervasive nor ⋯ [retaliatory] falls short of the showing [he] must make to state a viable hostile work environment claim'" (brackets in original)); 391 F. Supp. 2d at 51 ("Simply put, plaintiff cannot meet the burden of showing hostility in the work environment at SBV that was 'severe,' 'pervasive,' and 'abusive'"). Thus, in both cases, this Court considered all the evidence as to both the retaliation and hostile work environment claims; it did not refuse, as defendant claims, to consider retaliatory incidents in evaluating the hostile work environment claim.[12]

---

[12]Defendant also cites *Gardner v. Tripp County, South Dakota*, 66 F. Supp. 2d 1094, 1100-1101 (D.S.D. 1998). Defendant's Third Motion 16. There, the district court did state that an alleged retaliatory act cannot be considered to support a hostile work environment claim. 66 F. Supp. 2d at 1101. It based its analysis on two Eighth Circuit cases (*Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681 (8th Cir. 1998), and *Smith v. St. Louis University*, 109 F.3d 1261 (8th Cir.1997)). Neither case supports the holding in *Gardner*. The court quoted from *Wallin* that "'[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims.'" 66 F. Supp. 2d at 1100; 153 F.3d at 688. However, that statement from *Wallin* concerned discrimination claims, not hostile work environment claims. As to the claim of hostile work environment, the court of appeals in *Wallin* stated that the incidents were "not sufficiently severe or pervasive to affect the terms or conditions of Wallin's employment" and that the plaintiff had provided no evidence that the alleged harassing actions were related to the discrimination he alleged." *Id.* at 688. The court in *Gardner* cited *Smith* for the proposition that it "address[ed] hostile work environment and retaliation claims separately." 66 F. Supp. 2d at 1100. That is precisely what *Smith* did. It said nothing about incidents

VI

DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THERE ARE DISPUTED
FACTS OR, IN THE ALTERNATIVE, PLAINTIFF SHOULD BE ALLOWED
DISCOVERY BEFORE DEFENDANT'S MOTION IS CONSIDERED

Plaintiff includes Plaintiff's Second Statement of Material Facts as to Which There Is a

Genuine Dispute with this brief.  In addition, plaintiff included such a statement with her earlier

opposition to defendant's motion to dismiss plaintiff's amended complaint.  Dkt. No. 56.

As stated in plaintiff's opposition to defendant's motion to dismiss the Amended Complaint

(Plaintiff's Second Opposition 43-45), plaintiff has never had an opportunity to conduct discovery

in any of the three consolidated cases.  With that opposition, plaintiff submitted a Rule 56(f) affidavit

in which she set forth 14 distinct contentions and the reasons that discovery was necessary as to each

of them.

CONCLUSION

For the foregoing reasons, plaintiff submits that Defendant's Motion to Dismiss, or

Alternatively, for Summary Judgment on Plaintiff's Recent Complaint, Civil Action No. 06-1731

(PLF) should be denied.  A proposed order is attached.

Pursuant to Local Rule 7(f), plaintiff requests an oral hearing.[13/]

--------------------------

of retaliation not being able to be considered in a hostile work environment claim.  Therefore, because
the cited cases do not provide support for the holding in *Gardner*, and the court gave no other reason
for its holding, *Gardner* should not be followed by this Court.

[13/]As stated in plaintiff's sur-reply (Pl. Sur-reply 13, n. 10), plaintiff has previously requested an oral
hearing. The Court stated in its Minute Order of August 22, 2006, which granted plaintiff's unopposed
motion for leave to file a supplemental brief to her opposition to defendant's motion to dismiss, that
"[t]he Court reserves ruling on plaintiff's request for an oral hearing."  Plaintiff submits that an oral
hearing would significantly assist the Court in analyzing the complicated posture of this case.

Respectfully submitted,

/s/ Michael G. Shaw

BRUCE J. TERRIS (D.C. Bar No. 47126)
MICHAEL G. SHAW (D.C. Bar No. 473008)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005-4632
(202) 682-2100

Attorneys for Plaintiff

January 26, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

MARSHA LYNNE COLEMAN-ADEBAYO,  )
)
            Plaintiff,          )  Civil Action No. 03-2428 (PLF)
)
    v.                          )
)
STEPHEN L. JOHNSON, Administrator, )
United States Environmental Protection Agency, )
)
            Defendant.          )
_____ )
)
MARSHA LYNNE COLEMAN-ADEBAYO,  )
)
            Plaintiff,          )
)
    v.                          )  Civil Action No. 04-1399 (PLF)
)
STEPHEN L. JOHNSON, Administrator, )
United States Environmental Protection Agency, )
)
            Defendant.          )
_____ )
)
MARSHA LYNNE COLEMAN-ADEBAYO,  )
)
            Plaintiff,          )
)
    v.                          )  Civil Action No. 06-1731 (PLF)
)
STEPHEN L. JOHNSON, Administrator, )
United States Environmental Protection Agency, )
)
            Defendant.          )
_____ )

PLAINTIFF'S SECOND STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS A GENUINE DISPUTE

Pursuant to Local Rule 7(h), plaintiff hereby submits Plaintiff's Second Statement of Material

Facts as to which There Is a Genuine Dispute.  Defendant has submitted Defendant's Statement of

Material Facts Not in Dispute. As plaintiff shows below, these and many other material facts are in sharp dispute. Plaintiff incorporates by reference Plaintiff's Statement of Material Facts as to which There Is a Genuine Dispute that was submitted with Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint and Request for Oral Hearing (Dkt. No. 56).

1.       Paragraph 1 of Defendant's Statement of Material Facts Not in Dispute states that, "[b]y letter dated February 3, 2004, the EPA dismissed Plaintiff's administrative complaint (EPA File No. 2001-0014-HQ) in which she initially alleged a hostile work environment claim based on retaliatory acts" (citations omitted). Plaintiff does not dispute that the administrative complaint was dismissed, but disputes the implication of defendant's statement, which is that plaintiff does not have that claim in her judicial complaint. The allegations based on that administrative complaint are included in the judicial complaint filed on November 24, 2003. Civil Action No. 03-2428 (PLF). On July 26, 2004, the Court denied plaintiff's motion for a preliminary injunction (Opinion (Dkt. No. 28), p. 21; Order (Dkt. No. 29), p.1), granted summary judgment to defendant on plaintiff's reasonable accommodation claim (Opinion, p. 20; Order, p. 1), dismissed plaintiff's entire retaliation claim (Opinion, p. 11; Order, p. 1), and dismissed the case (Order, p. 2). Plaintiff filed a motion to alter or amend the judgment. Dkt. No. 30. In that motion, plaintiff did not request that the Court reconsider its decision on the retaliation claim as to the events in 2003. However, plaintiff did request that the Court reconsider its decision on the retaliation claim as to the events in 1999-2001. On November 30, 2005, the Court issued its opinion on plaintiff's motion to alter or amend judgment, which resulted in the Complaint no longer being dismissed and the retaliation claim based on the 1999-2001 events being reinstated. Dkt. No. 38. Plaintiff's administrative complaint filed

on March 2, 2001 (EPA File No. 2001-0014-HQ) included the 1999-2001 administrative claims that were not dismissed.

      2.      Paragraph 2 of Defendant's Statement of Material Facts Not in Dispute states that "Plaintiff failed to file a civil action within ninety days of EPA's dismissal of administrative complaint, EPA File No. 2001-0014-HQ." That is incorrect. Plaintiff had already filed a civil action based on EPA File No. 2001-0014-HQ and other administrative complaints on November 24, 2003. Civil Action No. 03-2428 (PLF). Defendant stated in its letter dismissing EPA File No. 2001-0014-HQ that it was being dismissed because of plaintiff's filing of the civil action.

           Respectfully submitted,

           /s/ Michael G. Shaw

           BRUCE J. TERRIS (D.C. Bar No. 47126)
           MICHAEL G. SHAW (D.C. Bar No. 473008)
           Terris, Pravlik & Millian, LLP
           1121 12th Street, N.W.
           Washington, DC  20005-4632
           (202) 682-2100

           Attorneys for Plaintiff

January 26, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          )  Civil Action No. 03-2428 (PLF)
            Plaintiff,                    )
                                          )
                                          )
    v.                                    )
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
            Defendant.                    )
                                          )
_____)
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )  Civil Action No. 04-1399 (PLF)
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
            Defendant.                    )
                                          )
_____)
                                          )
MARSHA LYNNE COLEMAN-ADEBAYO,             )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )  Civil Action No. 06-1731 (PLF)
                                          )
STEPHEN L. JOHNSON, Administrator,        )
United States Environmental Protection Agency, )
                                          )
            Defendant.                    )
                                          )
_____)

ORDER

Upon consideration of Defendant's Motion to Dismiss, or Alternatively, for Summary

Judgment on Plaintiff's Recent Complaint, Civil Action No. 06-1731 (PLF), filed on December 27,

2006, and the responses thereto, it is this _____ day of _____ 2007,

ORDERED, that the motion is DENIED.

SO ORDERED.

_____
PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE

## EEO COUNSELOR=S INITIAL INTERVIEW FORM

| | |
|---|---|
| **1. NAME OF AGGRIEVED INDIVIDUAL - FULL NAME:**<br>Marsha Coleman-Adebayo | **2. WHAT IS YOUR TELEPHONE NUMBER INCLUDING AREA CODE?**<br>HOME PHONE: 301- 320-3021 |
| **STREET ADDRESS (OR POST OFFICE BOX NUMBER)**<br>6615 East Court | **WORK PHONE: same** |
| **CITY**  **STATE**  **ZIP CODE**<br>Bethesda MD 20817 | **4. ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?**<br>X 9  YES (ANSWER A, B, C AND D BELOW)<br>9  NO (CONTINUE WITH QUESTION 5) |
| **3.  WHICH OFFICE DO YOU BELIEVE DISCRIMINATED AGAINST YOU?**<br>OCEM, Office of the Administrator | **A. NAME OF AGENCY/DIVISION WHERE YOU WORK: EPA** |
| **A. NAME OF OFFICE WHICH YOU BELIEVE DISCRIMINATED AGAINST YOU:**<br>OCEM | **B. STREET ADDRESS OF YOUR AGENCY/DIVISION:**<br>1200 Pennsylvania Ave. NW |
| **B. STREET ADDRESS OF OFFICE:**<br>1200 Pennsylvania Ave  Washington, D.C | **C. CITY**  **STATE**  **ZIP CODE**<br>Washington, D.C  20460 |
| **C. CITY**  **STATE**  **ZIP CODE**<br>Washington, D.C. 20460 | **D. WHAT IS THE TITLE, SERIES, AND GRADE OF YOUR JOB?**<br>Senior Policy Analyst – GS 15 |
| **5.  DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE:**<br>MONTH: Dec.  DAY: 07  YEAR: 2005 | **6.  NAME AND ADDRESS OF REPRESENTATIVE:**<br>Mr. Michael Shaw<br>1121  12th Street, N.W>, Washington, D C |

7. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST. BECAUSE OF YOUR:

9  **RACE**, IF SO, STATE YOUR RACE _____
9  **COLOR**, IF SO, STATE YOUR COLOR _____
9  **RELIGION**, IF SO, STATE YOUR RELIGION _____
9  **SEX**, IF SO, STATE YOUR SEX ___*female*_____
9  **NATIONAL ORIGIN**, IF SO, STATE YOUR NATIONAL ORIGIN_____
9  **AGE**, IF SO, STATE YOUR DATE OF BIRTH _____→_____8-18-52_____
9  **DISABILITY**, IF SO, STATE YOUR DISABILITY ___Optic Neuritis, Glaucoma, Hypertension, Post Traumatic Stress, Anxiety, Depression

9  **RETALIATION**, IF SO, STATE YOUR CHARGE ____( see attached complaint)
   (Complaints of discrimination because of age apply only to employees or applicants who are at least 40 years of age at the time of the alleged discriminatory actions )

8.  **EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** (For each allegation, please state to the best of your knowledge  information and belief what incident occurred and when the incident occurred  You may continue your answer on another sheet of paper if you need more space )

| | | |
|---|---|---|
| ( ) Appointment | ( ) Suspension | ( ) Retirement |
| ( ) Awards | ( ) Termination | ( X ) Time and Attendance |
| ( X) Duty Hours | ( ) Training | ( X ) Working Conditions |
| (X ) Harassment (Non-Sexual) | ( X ) Assignment of Duties | ( ) Evaluation / Appraisal  · Please see attached complaint for details and dates) |
| ( ) Harassment (Sexual) | ( ) Conversion to Full Time | |
| ( ) Promotion | ( ) Examination · Test | |
| (X ) Reassignment | ( ) Pay (Including Overtime) | |
| ( X) Reprimand | ( ) Reinstatement | |

| | | |
|---|---|---|
| **9(a).  I DISCUSSED MY ALLEGATIONS WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR: *Irma McKight***<br>DATE: | **9(b). NAME OF COUNSELOR: Irma McKnight** | **Plaintiffs' Exhibit 86** |

10. WHAT CORRECTIVE ACTION ARE YOU SEEKING? (If additional space is needed, use separate sheet.)

(Please see attached complaint )

| **11. DATE OF THIS INTERVIEW**<br>MONTH: January  DAY:  YEAR: 2006 | **12. AGGRIEVED INDIVIDUAL SIGN HERE:**  3-30-06<br>*Marsha Colema. Adebayo* |

**Complaint of Dr. Marsha Coleman-Adebayo**

I, Dr. Marsha Coleman-Adebayo am presently employed by the EPA and set forth in this administrative complaint as a violation of my civil rights (42 U S C sec 2000e, and other relevant statutes and case law) on the basis of retaliation for invoking the protections of the civil rights laws including Title 7 of the 1964 Civil Rights Act, the Age Discrimination Act of ADEA and the Rehabilitation Act  I am also being retaliated against for contacting Members of Congress and their staffs. EPA created a hostile environment, discriminated against me and has continued to accommodate my disabilities. EPA managers have refused and failed to provide aid and assistance during a medical emergency as a pattern and practice of retaliation and a hostile work environment. I have suffered retaliation and harassment for engaging in legally protected activities, and for other reasons set forth herein. These continuing acts of retaliation include actions that occurred on December 29, 2005 and January 3, 2006. it is noted that this claim of a hostile work environment deals with a continuing practice by the Agency and its managers, the conduct and cumulative effects of individual acts.

II. Rafael De Leon, my current supervisor was the Director of the Office of Civil Rights during a portion of my court battle  He is now my immediate supervisor. De Leon is not without knowledge of my medical problems   One indication of the hostile work environment that I have to deal with is that he has formulated medical opinions contradicting those of competent medical and other physicians. Upon receiving a faxed copy of my psychological evaluation report prepared by Dr. William Lawson, Chairman, Howard University Department of Psychiatry and supplemented with information provided by Internist Dr. James Davis, Mr. DeLeon concluded that "hostile workplace events", "verbal abuse and hostile interactions", and a "pattern and practice of harassment" are not medical facts and **"merely represent your self-serving and baseless version of events"** (email from Rafael De Leon, Director E P A Office of Cooperative Environmental management)  He thereby manifests hostility, animosity, bias, and a predisposition to dispute competent medical professionals despite his lack of education in the medical sciences. Managerial contradiction of competent medical opinions can lead to serious consequences, in this situation, even ones that involve life threatening situations.  Judge Paul Friedman noted that **"plaintiff [Dr. Marsha Coleman-Adebayo] is likely to suffer health risks, even serious health risks, if she goes to work in an EPA office and EPA has allowed her to work from home with minimal adverse effect".**

III.  Supervisor Rafael DeLeon in an e-mail dated December 7, 2005 entitled " Return to Work and ordered me back to work on December 14, 2005. In response, I wrote him a letter dated December 12, 2005 requesting that he reconsider his decision considering the numerous letters that he had received from my doctors. He refused to reconsider his decision and ordered me back into the office on December 14, 2005. Out of anxiety and concern for my health. I took leave until December 29th 2005. On December 29, 2005 after working for a number of hours at the EPA office, I became ill. I informed Tim

Sherer, my team leader that I had a medical emergency requiring medical care. He did little except look up the phone number to the clinic, which I was also doing, and gave me directions to walk unassisted to the E.P.A clinic. He sent no colleague or anyone to assist me or even get me to the door or to call a taxi. What he did was direct me via street instructions to the EPA clinic — numerous city blocks away — I was in a condition of possible peril to fend for myself in determining how to get there and certainly a possible victim of a stroke or heart attack. It should be noted that the OCHM office is not located on the main EPA campus and December 29th was my first working day at that specific EPA site – therefore I did not know the directions or how to get to the main EPA medical clinic office. The clinic staff found that I was suffering from elevated blood pressure and recommended that they call in ambulance to take me to the hospital. The EPA nurse called Acting Director Tim Sherer to ask him if he or someone else in my office was available to accompany me to the hospital. He said no one was available. Disoriented, confused and anxious, I had the EPA medical clinic call my husband who came and took me to my internist for treatment of elevated blood pressure. That I was on medication did not forestall this episode.

IV. On January 3, 2006, despite the medical emergency on December 29th, I was again ordered back into the EPA office. Once again, I became gravely ill. I needed medical assistance and notified supervisor Rafael De Leon accordingly. Although his office was down the hall from my office, he never came to my office to provide any assistance or support during the medical emergency. Thus, he showed reckless disregard and willful indifference to the health of an employee. Since he was in a managerial position this amounts to misfeasance on his part and on the part of the Agency that he represents. In addition, he and Tim Sherer, as Acting Director, abrogated their managerial responsibility to provide a duty of care and support during a medical emergency. Both Mr. DeLeon and Mr. Sherer's only recommended was that I walk to the clinic unaccompanied and unassisted.

V. Once I arrived at the EPA medical clinic the nurse took my blood pressure and immediately provided oxygen and called an ambulance. This marks a second acute episode within 5 days of working in an EPA office. However, this incidence marks the third time an EPA manager was called to provide assistance during a medical emergency and refused to come to my aid. The first time was under the supervision of Daiva Balkus in Cambridge, Maryland. In that instance, hotel officials ensured that I was transported to a hospital.

VI. A lengthy history of EPA violating my civil rights and otherwise is documented as well as my medical conditions. The conduct of Tim Sherer and Rafael De Leon go far beyond simple negligence or bad judgment. De Leon's earlier disregard of competent medical opinion has been noted and manifested in the January 3rd incident. Both the 12/29/05 and 01/03/06 episodes reflect malicious intent to do harm or to continue creating a hostile work environment which constitutes recklessness or calloused indifference. , E P A's conduct in my case far exceeds that minimal threshold and does not comport with the duty of care and the "human instincts" doctrine.

VII. These latest acts of reprisal and a hostile work environment are consistent with a pattern and practice of retaliation for participating in protected activity and continued harassment for winning a jury verdict against the Agency. Mr. DeLeon notified me that as manager he decided to terminate my Internet access on or about February 8, 2006 while I was covered under the Family and Medical Leave Act and did not have access to office equipment located on the EPA campus. Since termination of my EPA accessed internet, I had had to communicate with E P A concerning my time and attendance and other employment matter using my home computer. In some instances, such as payroll matters, I am unable to access important EPA documents because I do not have access to the EPA I  EPA officials, such as Mr. DeLeon and others have to communicate with me using my home equipment.

## BACKGROUND

VIII. For purposes of historical clarity a brief framework of retaliation, a hostile work environment and a consistent pattern and practice of discrimination is useful. In 1995, I filed a discrimination complaint with the EPA Office of Civil Rights which progressed to litigation. On August 18, 2000 a federal jury found that the E P A had violated my civil rights on the basis of race, sex, color, and a hostile work environment and granted a substantial award of damages. The verdict failed to cure the problem as hostility and retaliation continued which resulted in my filing several complaints: 99-0155 HQ (03-16-00); 2000-0007 HQ (07-28-00); 2000-0081 HQ (10-17-01); 2000-0085 HQ (01-01-01), and 2000-0014 HQ (03-02-01). Congressman F. James Sensenbrenner Jr. (R-WI) and current chairman of the House Judiciary Committee) convened two congressional hearings to investigate EPA misconduct in my case. Chairman Sensenbrenner on October 4, 2000 in his opening statement before the Committee on Science hearing entitled "Intolerance at the E P A" conferred upon me congressional whistleblower protection. However, the pattern and practice of retaliation has not ceased.

IX. Physicians have informed the Agency that I suffer from a number of serious and life threatening diseases, such as multiple sclerosis, optic neuritis, glaucoma, and hypertension (elevated blood pressure)- disabling conditions requiring accommodation if not singularly then certainly in composite. E P A is well aware of these problems. EPA is also in receipt of a letter from my psychiatrist, Dr  William Lawson diagnosing me with post traumatic stress disorder (PTSD) anxiety and depression.

X. Earlier diagnosed conditions and attendant problems were accommodated by my working at home where I did research on a computer and/or at the library. No complaints and no disciplinary proceedings regarding my work emanated from E P A, the work being entirely satisfactory. This mutually beneficial and satisfactory arrangement ended not because of any improvement in my conditions but when I was called back after I refused the E P A's settlement offer.

I hereby submit this letter of Complaint.

**Resolutions: or #10 from EEO Counselor Interview Form**

**What Corrective Action Are you Seeking?**

1). I request that the E P A  proceed to resolve these matters in good faith.

2).  That the pattern of hostility and retribution cease.

3).  That I be allowed to work from my home office on a full-time basis, as I have successfully done for over five years.

4).  That I be awarded any and all damages allowed by law

5).  All attorney fees and other professional fees will be paid.

6)  All annual and sick leave and advanced annual and sick leave will be returned to my EPA account. Compensated (both in money and annual leave time) for all medical expenses occurred as a result of having to file for the FMLA.

7). $300,000 in compensatory damages

8).  Moved to another EPA office where I do not have managers that are named in my discrimination case.

9).  Time used from the "leave bank" will be returned to the agency and not charged to my account.

Respectfully,

Marsha Coleman-Adebayo, PhD

**COMPLAINT OF DISCRIMINATIC THE FEDERAL GOVERNMENT**
BECA... OF
RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, DISABILITY, OR REPRISAL
*(Please type or print)*

(FOR AGENC'  )

| | |
|---|---|
| 1. YOUR (COMPLAINANT=S) FULL NAME:<br>Marsha Coleman-Adebayo | 2. WHAT IS YOUR TELEPHONE NUMBER INCLUDING AREA CODE?<br>**(301) 320-3021** |

| | |
|---|---|
| STREET ADDRESS (OR POST OFFICE BOX NUMBER)<br><br>8815 Earl Court | WORK PHONE:<br>(same) |

| CITY<br>Bethesda | STATE<br>Maryland | ZIP CODE<br>20817 | 4. ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?<br>9 YES (ANSWER A, B, C AND D BELOW) X<br>9 NO (CONTINUE WITH QUESTION 5) |
|---|---|---|---|

| | |
|---|---|
| 3. WHICH FEDERAL OFFICE DO YOU BELIEVE DISCRIMINATED AGAINST YOU?<br>*(Prepare a separate complaint form for each office.)*<br>OCEM/EPA | A. NAME OF AGENCY WHERE YOU WORK: EPA |
| A. NAME OF OFFICE WHICH YOU BELIEVE DISCRIMINATED AGAINST YOU:<br>OCEM | B. STREET ADDRESS OF YOUR AGENCY:<br><br>1200 Pennsylvania Ave, N.W. |
| B. STREET ADDRESS OF OFFICE:<br>Official address: 1200 Pennsylvania, Washington, D.C. | C. CITY      STATE      ZIP CODE<br><br>Washington, DC |
| C. CITY      STATE      ZIP CODE<br>Washington, D.C. | D. WHAT IS THE TITLE, SERIES, AND GRADE OF YOUR JOB?<br><br>GS 15 |

| | |
|---|---|
| 5. DATE (s) ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE:<br><br>MONTH: sept/14/05 and Oct 26/05      DAY:sept 14 and Oct. 26th      YEAR: 2005 | 6. NAME AND ADDRESS OF REPRESENTATIVE:<br>Mr. Michael Shaw, Esq.<br>1121 12th Street, NW<br>Washington, D.C. |

7. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST. BECAUSE OF YOUR:

9 RACE, IF SO, STATE YOUR RACE

9 COLOR, IF SO, STATE YOUR COLOR

9 RELIGION, IF SO, STATE YOUR RELIGION

9 NATIONAL ORIGIN, IF SO, STATE YOUR NATIONAL ORIGIN

9 SEX, IF SO, STATE YOUR SEX

9 HANDICAP, IF SO, STATE YOUR HANDICAP     MS, Glaucoma, Hypertension, Optic Neuritis,  Depression

9 REPRISAL, IF SO, STATE YOUR CHARGE : retaliation and harassment for previous EEO activities, filed a federal suit, won a court judgment against the EPA, provided leadership to pass national law against discrimination and provides national leadership on civil rights matters .

9 AGE, IF SO, STATE YOUR DATE OF BIRTH

*(Complaints of discrimination because of age apply only to employees or applicants who are at least 40 years of age at the time of the alleged discriminatory actions.)*

8. EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST (TREATED DIFFERENTLY FROM OTHER EMPLOYEES OR APPLICANTS) BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, HANDICAP, OR REPRISAL. *(For each allegation, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred. You may continue your answer on another sheet of paper if you need more space.)*

(see attached)

**Plaintiffs' Exhibit 87**

| | |
|---|---|
| 9(a). I HAVE DISCUSSED MY COMPLAINT WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR:<br>9 YES     X     9 NO | EEO Counselor<br>Irma McKnight |

10. WHAT CORRECTIVE ACTION ARE YOU SEEKING? *(If additional space is needed, use separate sheet.)*

Exhibit  A1
Page  1  of  6

13

7674

Have EPA determine that I am disabled within the meaning of the Rehabilitation Act.

Have EPA provide reasonable accommodations to me as a disabled person, including working at home.

Stop EPA from discriminating against me on the basis of my race, color, sex and/or disability and from retaliating against me because I filed EEO complaints and civil actions, or because of other activities I have pursued in furtherance of my civil rights.

Award compensatory damages, including, but not limited to, medical costs, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, inconvenience, loss of reputation and other nonpecuniary costs.

Award attorneys' fees and other costs.

| 11. DATE OF THIS COMPLAINT : 11/09/05 | | | 12. SIGN YOUR (COMPLAINANT=S) NAME HERE: |
|---|---|---|---|
| MONTH: November | DAY:17 | YEAR:2005 | Marsha Coleman-Adebayo |

## READ CAREFULLY

< You may have a representative of your choice at all stages of the complaint process.

< This form should be used only if you, as a Federal employee, or as an applicant for Federal employment, think you have been discriminated against because of race, color, religion, sex, national origin, disability, age, or reprisal by a FEDERAL agency and have presented the matter for informal resolution to an Equal Employment Opportunity (EEO) Counselor within 45 calendar days of the date the incident occurred, or if a personnel action, within 45 calendar days of its effective date.

< If the matter has not been resolved to your satisfaction within 30 calendar days from the date on which the matter was first called to the attention of the EEO Counselor, he or she must on the 30th day issue to you a NOTICE OF FINAL INTERVIEW. You have the right to file a discrimination complaint at any time thereafter up to 15 calendar days of receipt of the NOTICE OF FINAL INTERVIEW.

< These time limits may be extended if you show that you were not notified of the time limits and were not otherwise aware of them, or that you were prevented by circumstances beyond your control from submitting the matter within the time limits, or for other reasons considered sufficient by the agency.

< Your written complaint should be filed by you, or by your designated representative, with the Office of Civil Rights where the alleged discrimination occurred.

< The agency must accept or dismiss the complaint and if it does not dismiss it, the agency must, within 180 days, conduct a complete and fair investigation. You will have an opportunity to talk with an investigator and present all the facts which you believe show discrimination. The investigator will afford you an opportunity to review affidavits intended for inclusion in the investigative report so that you may rebut testimony given by witnesses or alleged discriminating officials.

< At the conclusion of the investigation, the agency must provide you with a copy of the investigative file and a notice that, within 30 days of your receipt of the investigative file, you have the right to request a hearing or a final agency decision on the record. If you do not receive this notice, you have the right to request a hearing at any time 180 days after the filing of the formal complaint.

< If the complaint is one that does not contain issues that are appealable to the Merit Systems Protection Board (MSPB), at the conclusion of the investigation, you may request either a hearing by an Equal Employment Opportunity Commission (EEOC) administrative judge (AJ) or an immediate final decision by the employing agency.

**Exhibit** A1

< The AJ must process the request for a hearing, issue findings of fact and conclusions of law, and order an appropriate **Page** 2 of 6

14

remedy within 180 days.

< After the final decision of the agency, you may appeal to the Commission within 30 days or may file in U.S. District Court within 90 days. Either party may request reconsideration by the Commission. You may seek judicial review.

< If the agency dismisses all or part of your complaint, you may file an expedited appeal, within 30 days of the notice of the dismissal, with the EEOC. The EEOC may determine that the dismissal was improper, reverse the dismissal, and remand the matter back to the agency for completion of the investigation.

< You also may appeal a final agency decision to the EEOC within 30 days of notice of the decision. The EEOC will examine the record and issue decisions.

< If the complaint is on a matter that is appealable to the Merit Systems Protection Board (e.g., a mixed case such as a termination of a career employee), you may appeal the final agency decision to the MSPB within 20 days of receipt or go to U.S. District Court within 30 days. You may petition the EEOC for review of the MSPB decision concerning the claim of discrimination.

**Information on all EEOC-enforced laws may be obtained at http://www.eeoc.gov, or by calling toll free on 800-669-EEOC. EEOC=s toll free TDD number is 800-800-3302.**

/S

Exhibit A
Page 3 of 6

**Complaint of Discrimination in the Federal Government**
**Dr. Marsha Coleman-Adebayo**
**Continuation of Box # 8**

This complaint addresses the Agency's failure to declare me disabled under the Rehabilitation Act, to provide me reasonable accommodation under the Rehabilitation Act, and to harass and retaliate against me because of a 2000 jury verdict in my favor, current litigation in federal court, two appearances before Congress, leadership and passage of federal legislation to protect victims of discrimination, and continued support for victims of discrimination. In addition, the Agency has attempted to intimidate me into resigning or entering into a settlement to leave the Agency.

Despite extensive medical documentation by my cardiologist, neurologists, ophthalmologist, neuro-ophthalmologist and internist, the Agency has denied me the status of disabled. I have had to live under the threat of returning to a hostile work environment that would endanger my health.

Despite repeated warnings from my doctors, the Agency directed me to return to work but then allowed me to work full-time from home without declaring me disabled under the Rehabilitation Act. I continue to have medical problems at Agency offices and gatherings. During a 2004 office retreat in Cambridge, Maryland, I was rushed to the hospital due to elevated blood pressure. Although my supervisor, Daiva Balkus, was called by hotel staff, she did not to come to my aid. In a recent office retreat on November 9, 2005, I became ill during the meeting. My supervisor, Rafael DeLeon, allowed me to leave during the lunch segment of the meeting.

I have repeatedly provided the Agency with documentation from my doctors to support my requests under the Rehabilitation Act. Nevertheless, on August 29, 2005, I was requested to undergo a humiliating and degrading Independent Medical Evaluation (IME). The doctor performed a perfunctory examination which was not performed in sufficient detail for the Agency to have proper information for an informed decision. The doctor asked only a very few questions and ordered no tests. William Haig, the disability coordinator who ordered the IME, later remarked to Dwight Welch, the President of the NTEU union, that he had requested very few IME's since he began working in that position at EPA. The request that I have a perfunctory IME, which was not intended to obtain information for the Agency to make an informed decision, was part of the Agency's discrimination, harassment, and retaliation.

Mr. Haig sent me a letter titled "EPA Determination of Disability" on September 14, 2005, denying my request. Even though I had provided letters from my doctors based on numerous appointments with them, Mr. Haig based his decision on a one-time visit to an EPA-hired doctor.

Mr. Haig stated the following in his letter:

"Dr. [Norman] Luban was asked to determine with a reasonable degree of medical certainty, if Dr. Coleman-Adebayo is diagnosed with one, or more, of four specific medical conditions and the extent to which any of these are affecting one, or more, or her major life activities."

"Dr. Luban is unable to determine the presence of two of the possible conditions because he has no tests or procedures which confirm or deny the presence of either."

1

/ Lp

"One of the medical conditions, based on [Dr. Luban's] examination, did not exist at the time and the fourth medical condition for which specific testing indicated uncertainty for a conclusive medical diagnosis."

"[Dr. Luban] indicates that, in his opinion, Dr. Coleman-Adebayo has another medical condition."

"However, after consultation with Dr. Neal Presant, FOH, the medical information provided by Dr. Luban is not sufficient to determine that this employee is, at this time, an individual with a disability in accordance with the Order, Procedures, Guidance and Statute identified above."

Thus, Dr. Luban could neither confirm nor deny the presence of MS or if my symptoms affected one or more of four specific medical conditions. In other words, Dr. Luban was unable to make a medical diagnosis of the presence of MS and was unsure of another medical condition. However, MS is clinically diagnosed over a period of time. Therefore, one visit is inadequate for a finding of this complicated disease. My doctors have diagnosed me as having MS, optic neuritis, and glaucoma. My doctors have said that those conditions affect major life activities.

Clearly dissatisfied with the ambiguity of Dr. Lubans's report, the Agency or Dr. Luban decided to consult with Dr. Neal Presant. In this case, Dr. Presant never met with me for a clinical evaluation. As noted above, MS can only be diagnosed through a long-term clinical evaluation. However, the lack of following a clinical protocol for diagnosing MS did not preclude Dr. Presant from voicing an opinion based on the lack of a conclusion by Dr. Luban. Both Dr. Luban and Dr. Presant voiced their opinions based on insufficient knowledge rather than anything approaching medical certainty.

Mr. Haig does not possess any medical knowledge. The Agency had two medical evaluations that did not approach the standards that the Agency uses to determine whether communities are at risk for exposure to toxins. Faced with very questionable information from its own doctors, and disregarding the letters from my doctors -- noted Georgetown University professors of medicine and specialists in cardiology -- the Agency decided to deny my request without having sufficient information to make that decision. The decision is contrary to overwhelming medical documentation from my practicing physicians. The Agency decided to risk my health and future by denying me a determination of disability.

However, even though his letter is titled "EPA Determination of Disability," Mr. Haig names Rafael DeLeon as the decision maker. Mr. DeLeon, in an e-mail and letter to me dated October 26, 2005, states that "I am denying your request based on [Mr. Haig's] determination." Mr. DeLeon does not question the deficiencies in Mr. Haig's letter or the lack of integrity of this process. He simply "rubber-stamped" the decision by Mr. Haig.

17

Exhibit _A1_
Page _5_ of _6_