UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARSHA LYNNE COLEMAN-ADEBAYO,   )<br>                                                                        )<br>                    Plaintiff                       )<br>                                                                        )<br>            v.                                                      )<br>                                                                        )<br>STEPHEN L. JOHNSON, Administrator,  )<br>U.S. Environmental Protection Agency,   )<br>                                                                        )<br>                    Defendant.                   )<br>                                                                        )<br>_____)<br>MARSHA LYNNE COLEMAN-ADEBAYO,   )<br>                                                                        )<br>                    Plaintiff                       )<br>                                                                        )<br>            v.                                                      )<br>                                                                        )<br>STEPHEN L. JOHNSON, Administrator,  )<br>U.S. Environmental Protection Agency,   )<br>                                                                        )<br>                    Defendant.                   )<br>                                                                        )<br>_____)<br>MARSHA LYNNE COLEMAN-ADEBAYO,   )<br>                                                                        )<br>                    Plaintiff                       )<br>                                                                        )<br>            v.                                                      )<br>                                                                        )<br>STEPHEN L. JOHNSON, Administrator,  )<br>U.S. Environmental Protection Agency,   )<br>                                                                        )<br>                    Defendant.                   )<br>                                                                        )<br>_____) | <br><br><br><br>Civil Action No. 03-2428(PLF)<br><br><br><br><br><br><br><br><br>Civil Action No. 04-1399(PLF)<br><br><br><br><br><br><br><br><br>Civil Action No. 06-1731(PLF) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT ON PLAINTIFF'S RECENT COMPLAINT, CIVIL ACTION NO. 06-1731(PLF)**

This filing responds in the most concise manner possible to "*Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment and Request for Oral Hearing*," (R. 13, Civil Action No. 06-1731(PLF))(Jan. 26, 2007) as well as addresses arguments presented in Plaintiff's miscellaneous filings including "*Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment and Request for a Hearing*" (R. 68, Civil Action No. 03-2428(PLF))(Dec. 22, 2006) and "*Plaintiff's (Second) Supplemental Memorandum to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment and Request for Oral Hearing*," (R. 66, Civil Action No. 03-2428(PLF))(Oct. 31, 2006).  The three cases, Civil Action Nos. 03-2428(PLF), 04-1399(PLF), and 06-1731(PLF), are consolidated.

## ARGUMENT

**A.	Plaintiff's Discussion of <u>Velikonja v. Gonzales</u> in Her October 31, 2006 Supplemental Memorandum**

Plaintiff's Supplemental Memorandum filed on October 31, 2006 suggests that <u>Velikonja v. Gonzales</u>, 466 F. 3d 122 (D.C. Cir. 2006) is applicable to the factual allegation that she was retaliated against when the Environmental Protection Agency ("EPA") initiated "an ethical investigation concerning Plaintiff's participation in the

2

National Summit on Africa." See R. 49, First Amended Complaint ¶ 15 (Civil Action No. 03-2428(PLF)). Velikonja v. Gonzales, however, plainly does not apply to this case.

First, Plaintiff's allegation in ¶ 15 of her First Amended Complaint (Civil Action No. 03-2428(PLF)), which stems from EPA Case No. 99-0115HQ, alleges no more than on September 8, 1999, Dr. David Kling talked to Plaintiff and confirmed that the federal ethical rules related to her participation in the National Summit on Africa. In stark contrast, Velikonja v. Gonzales involved allegations that the FBI's Office of Professional Responsibility retaliated against Ms. Velikonja by carrying out two in-depth disciplinary investigations over a lengthy period of time–during which the plaintiff was precluded from receiving a promotion–and then imposed an unusually severe penalty on her. 466 F.3d at 123. The D.C. Circuit expressly stated that it was *not* deciding the issue of whether "a mere investigation" states a claim and is subject to dismissal, because the absolute bar to promotions as a result of the Office of Professional Responsibility's disciplinary investigations was enough to state a reprisal claim. Id. at 123-124.

Specifically, the Office of Professional Responsibility's two *lengthy disciplinary* investigations–*actually initiated and carried out* against Ms. Velikonja–resulting in a *bar to promotions* during the pendency of the investigations and a recommendation for a severe *penalty* cannot legitimately be compared to a conversation with a federal manager on federal ethical rules. For all these reasons, and for all the reasons previously set forth (no prior EEO activity, ban on collateral attacks, failure to state a claim), this claim -- i.e., the retaliation claim based on confirmation of the ethical rules -- should be dismissed.

See R. 44, Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, at 11-14 (Civil Action No. 03-2428(PLF))(Feb. 6, 2006); R. 53, Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint, at 3-7 (Civil Action No. 03-2428(PLF))(June 2, 2006).

**B.     Plaintiff's Discussion of <u>Clark County School District v. Breeden</u> in Her December 22, 2006 Sur-Reply**

Plaintiff's contention that Defendant argued "for the first time" the holding of <u>Clark County School District v. Breeden</u>, 532 U.S. 268 (2001) regarding a previously planned transfer in its September 1, 2006 Reply is simply false. R. 68, Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment and Request for a Hearing, at 2-3 (Civil Action No. 03-2428(PLF)). Defendant made this "insufficient nexus" argument initially in 2004 in its "Defendant's Reply Memorandum in Opposition to Preliminary Injunction," at 16. R. 19, Civil Action No. 03-2428(PLF). It again discussed the insufficient nexus issue in its "Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment," at 23 n. 9. R. 44, Civil Action No. 03-2428(PLF). Defendant expanded on its nexus argument again in its "Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's First Amended Complaint,"at 14, n.14. R. 53, Civil Action No. 03-2428(PLF).

In sum, therefore, Defendant has identified multiple reasons that Plaintiff's November 2003 reassignment to the Office of the Administrator is legally deficient as a matter of law under <u>Clark County</u>. First, any alleged prior EEO activity identified by

4

Plaintiff is far too divergent in time from the November 2003 reassignment to meet Clark County's nexus requirement for a retaliation claim. Second, the end of a lengthy mediation process without settlement is neither "opposition" or "participation" activity on Plaintiff's part under Title VII. Third, even if it were so considered, because Mr. Spears decided in August 2003 that Plaintiff would have to be reassigned if mediation were ultimately unsuccessful, EPA was not required to "suspend" a "previously planned transfer" when mediation ended in November 2003 or when plaintiff's "Title VII lawsuit ha[d] been filed" at the end of November 2003. By the express holding of Clark County, EPA's "proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality" in the instant case. 532 U.S. at 272.

**C.   Plaintiff's Discussion of Burlington Northern in Her December 22, 2006 Sur-Reply**

Plaintiff's mistaken argument that the U.S. Supreme Court's decision in Burlington Northern & Sante Fe Ry. v. White, 126 S. Ct. 2406 (2006) renders all existing retaliation law in the D.C. Circuit as nonexistent is simply wrong. R. 68, Pl.'s Sur-reply, at 5 (Civil Action No. 03-2428(PLF)). Burlington Northern expressly adopted the D.C. Circuit's "material adverse" standard defined in Rochon v. Gonzales, 438 F. 3d 1211 (D.C. Cir. 2006), as adverse action on the part of the employer that "well might...dissuade[] a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2415 (quoting Rochon v. Gonzales, 438 F. 3d 1211, 1219 (D.C. Cir. 2006)). Plaintiff reads Burlington Northern as creating a conflict in the law

5

where none exists. Plaintiff berates Defendant for "continu[ing] to claim that adverse action is required in retaliation cases in direct contradiction of Burlington Northern." See Civil Action No. 03-2428(PLF), R. 68, Plaintiff's Sur-Reply, at 8 (Dec. 22, 2006). Presumably this Court would disagree with Plaintiff's reading too, as this Court continues to use the "adverse action" requirement post-Burlington Northern. See Stone-Clark v. Blackhawk, Inc., 460 F. Supp. 2d 91 (D.D.C. 2006); Robinson v. Winter, 457 F. Supp. 2d 32 (D.D.C. 2006).

Moreover, Plaintiff's derogation of reprisal cases such as Russell v. Principi, 257 F.3d 815 (D.C. Cir. 2001) and Ware v. Billington, 344 F. Supp. 2d 63 (D.D.C. 2004) with the suggestion they are no longer good law after Burlington Northern likewise seems a flawed reading not shared by this Court. See Edwards v. EPA, 456 F. Supp. 2d 72 (D.D.C. 2006)(citing Ware v. Billington post-Burlington Northern); Chaple v. Johnson, 453 F. Supp. 2d 63 (D.D.C. 2006) (citing Russell v. Principi post-Burlington Northern). In fact, this Court has expressly rejected an argument such as Plaintiff's--that expansive briefing is necessary on the law of retaliation following the decision in Burlington Northern & Sante Fe Railway Co. v. White, 126 S. Ct. 2405 (2006)--because the U.S. Supreme Court's "unanimous decision in Burlington Northern upheld [the D.C. Circuit's and the Seventh Circuit's] articulated standard for determining if retaliation has occurred under Title VII." Robinson v. Winter, 457 F. Supp. 2d 32, 34-35 (D.D.C. 2006).

One can easily harmonize Burlington Northern with previous U.S. Supreme Court and D.C. Circuit precedent. Defendant stands by its discussion of Burlington Northern

and other applicable precedent, as argued in its "Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint," at 2-6 (R. 63, Civil Action No. 03-2428(PLF)). The bottom line is that under Burlington Northern by itself--or under the full line of retaliation precedent–there is nothing about Plaintiff's lateral reassignment (or the ethics discussion with a supervisor) that rises to the level of materially adverse harm sufficient to dissuade a reasonable person from exercising his or her rights under the civil rights laws.

D.   **Plaintiff's Opposition to Defendant's Dispositive Motion in Civil Action No. 06-1731(PLF)**

In Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment and Request for Oral Hearing," Plaintiff puts forth a number of meritless, discrete arguments. Each is addressed in turn.

   1.   **Plaintiff's Argument Related to the Dismissed Reasonable Accommodation Claim**

Plaintiff argues that she has *not* attempted "to revive her reasonable accommodation claim." R. 13, Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Civil Action No. 06-1731 (PLF), at 4-5. How Plaintiff can seriously make this representation to this Court is startling. A reasonable accommodation claim is explicitly included in two complaints filed by Plaintiff (in addition to the reasonable accommodation claim in Civil Action No. 03-2428 (PLF), dismissed in Coleman-Adebayo v. Leavitt, 400 F. Supp. 2d 257 (2005); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132 (D.D.C. 2004)).

7

More specifically, the Court granted summary judgment for Defendant on Plaintiff's reasonable accommodation claim because, as a matter of law, her hypertension and related stress did not render her a person with a disability under the Rehabilitation Act and her request to work from home full-time was not a reasonable accommodation responsive to multiple sclerosis, glaucoma, and optic neuritis.  See Coleman-Adebayo v. Leavitt, 400 F. Supp. 2d 257 (2005); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132 (D.D.C. 2004).  Further, lest there be *any* doubt about whether *amendment of the initial complaint* was appropriate, the Court expressly held that there was "no basis for allowing the plaintiff to amend her complaint" on the disability claim because "her request for accommodations has never been based on" multiple sclerosis, glaucoma, or optic neuritis and due to the fact that "there is no medical support for her accommodation request on these bases."  Coleman-Adebayo v. Leavitt, 400 F. Supp. 2d 257, 263 (2005).

Nevertheless, Plaintiff's First Amended Complaint in Civil Action No. 03-2428 (PLF), at 16-20 -- at paragraphs 57 to 67 -- contains as its "First Claim" the "Failure to Provide Reasonable Accommodation" by not allowing Plaintiff to "work at home" in violation of the Rehabilitation Act.  Plaintiff's Complaint in Civil Action 04-1399(PLF), at 15-19 -- at paragraphs 54 to 63 -- contains as its "Second Claim" the "Failure to Provide Reasonable Accommodation" by not allowing Plaintiff to "work at home" in violation of the Rehabilitation Act. Moreover, both Complaints likewise include as requested "Relief" an "Order" declaring Defendant "to recognize Plaintiff as disabled within the meaning of the Rehabilitation Act" and directing Defendant "to provide

reasonable accommodations," including working at home.  See Plaintiff's First Amended Complaint, Civil Action No. 03-2428 (PLF), at 22; Plaintiff's Complaint, Civil Action 04-1399, at 19 (PLF).  The First Amended Complaint in Civil Action No. 03-2428(PLF) and the 2004 Complaint both allege impairments raised in her initial complaint: multiple sclerosis, glaucoma, optic neuritis, hypertension, and stress.  See Plaintiff's First Amended Complaint, ¶¶ 9, 42-43 (Civil Action No. 03-2428(PLF)); Plaintiff's Complaint, ¶¶ 9, 42-43 (Civil Action 04-1399(PLF)).

Therefore, Plaintiff's representation to this Court that she has *not* attempted to revive her reasonable accommodation claim is arguably misleading.  Further, by amending the initial complaint to include the same reasonable accommodation claim and by filing the 2004 Complaint again raising the same reasonable accommodation claim, Plaintiff has also completely ignored the opinions of this Court which are the controlling law of the case and has unreasonably duplicated, confused, and enlarged the proceedings.

Additionally, Plaintiff has repeatedly attempted to revive her failed disability claim in the guise of a retaliation claim in all four complaints by alleging, under a retaliation theory, that she hypothetically would incur medical harm if she were to return to work full-time at an EPA office.  E.g., Civil Action No. 03-2428 (PLF),  First Amended Complaint,  ¶ 56 (March 27, 2007); Civil Action No. 04-1399 (PLF), Complaint, ¶ 44 (Aug. 23, 2004); Civil Action No. 06-1731(PLF), Complaint, ¶¶ 48-60, 64 (Oct. 6, 2006).

The only correct statements Plaintiff makes in the first argument in her opposition memorandum on this issue is an acknowledgment that her disability claim has been dismissed by this Court and an admission that she is barred from bringing that claim in subsequent complaints. See Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Civil Action No. 06-1731(PLF), at 5. Given this concession, this Court should dismiss with prejudice the failure to accommodate claims in Plaintiff's First Amended Complaint in Civil Action No. 03-2428 (PLF), at 16-20 (March 27, 2006) and Plaintiff's Complaint in Civil Action 04-1399, at 15-19 (PLF)(August 23, 2004) based on law of the case and/or collateral estoppel.[1]

Moreover, the hypothetical harm to Plaintiff's health if she were to return to work at an EPA office, as alleged and argued in her retaliation claim, should likewise be recognized for what they are: an attempt to erase the Court's prior rulings in this proceeding and to ignore reprisal precedent requiring real, actual (non-hypothetical), and materially adverse harm that would cause a reasonable person to be dissuaded from exercising his or her rights under the civil rights laws. For these reasons too dismissal is appropriate.

---

[1] Defendant has also received judgment in its favor on a Rehabilitation Act claim raised in a civil action tried before a jury in 2000. See Coleman-Adebayo v. Browner, Civil Action No. 98-1939 (CKK) (D.D.C.) (R.34).

## 2. Plaintiff's Argument Related to Her Filing of Multiple, Substantially Duplicative Complaints

Plaintiff contends that she "needed to file three complaints in order to protect her legal rights." Civil Action No. 06-1731(PLF), R. 13, Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Civil Action No. 06-1731 (PLF), at 5. Plaintiff's explanation for filing the First Amended Complaint, the 2004 Complaint, and the 2006 Complaint is incredible.

Currently before this Court are the equivalent of three largely identical complaints, Civil Action No. 03-2428 (PLF)[2]; Civil Action No. 04-1399 (PLF); Civil Action No. 06-1731(PLF). A straightforward "side-by-side" comparison of the complaints in Civil Action No. 04-1399 (PLF) and Civil Action No. 06-1731(PLF) to the First Amended Complaint in Civil Action No. 03-2428 (PLF) demonstrates without exception that nearly every factual allegation and every legal claim in the 2004 and 2006 Complaints are duplicative of an allegation or claim in the First Amended Complaint and/or the initial Complaint.

A plaintiff has no right to maintain two or more identical claims in the same court against the same defendant. See United States v. Haytian Republic, 154 U.S. 118, 123-

---

[2]Defendant has set forth with specificity the reasons that the newly-added hostile work environment claim should be dismissed with prejudice. See *Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, or Alternatively for Summary Judgment,* at 14-17 & n.15-17 (June 2, 2006)(R. 52, Civil Action No. 03-2428(PLF)); *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing,"* at 18-23 (Sept. 1, 2006)(R. 63, Civil Action No. 03-2429(PLF).

125 (1894); Olney v. Gardner, 771 F.2d 856 (5th Cir. 1985); Zerilli v. The Evening News, 628 F.2d 217 (D.C. Cir. 1980); Walton v. Eaton Corp., 563 F. 2d 66 (3d Cir. 1977); Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947); Chinn v. Giant Food, Inc., 100 F. Supp.2d 331 (D. Md. 2000); Oxbow Energy Inc. v. Koch Industries, Inc., 686 F. Supp. 278, 281-282 (D. Kan. 1988).[3]  As the First Circuit has instructed, "There is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket."  Sutcliffle Storage & Warehouse, Co., 162 F.2d 849, 851-852.  Further, while consolidation may be an administratively efficient solution in some circumstances, consolidation should *not* be used "to expand the procedural rights" a plaintiff might otherwise have had.  Walton v. Eaton Corp., 563 F. 2d at 71-72.  Likewise, duplicative filings and consolidation should not be permitted to permit a plaintiff to circumvent improperly the rules relating to the amendment of complaints.  Id.

In the instant case, this is precisely what Plaintiff admits she is doing.  Plaintiff suggests in her opposition memorandum (R. 13, Civil Action No. 06-1731(PLF)) that the First Amended Complaint was filed in order to add a hostile work environment claim to respond to Defendant's argument that her reprisal claim was not an adverse action.  Pl.'s

---

[3]This includes all claims that were or could have been brought in the initial Complaint.  Id.

Op. at 7 (Civil Action No. 06-1731(PLF))(R. 13).[4]  Unfortunately, even if that purpose were proper, the hostile work environment claim in the first amended complaint was untimely filed as a civil action and fails to state a claim itself.  See Civil Action No. 03-2428(PLF), R. 63, Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing, at 18-23 (Sept. 1, 2006); Civil Action No. 06-1731(PLF), R. 13, Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, at 14-17 (June 2, 2006).  The Court should dismiss the hostile work environment claim in the First Amended Complaint for untimeliness and for failure to state a claim upon which relief may be granted.

Plaintiff also suggests that the 2004 Complaint was filed "in order to include the 2003 retaliatory actions in this litigation."  See Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Civil Action No. 06-1731(PLF), at 7.  This too makes no sense.  While timely amending the original complaint to include the exhausted administrative complaints may have been proper, Plaintiff's filing a separate complaint in August 2004 and then including the 2003 reprisal allegations in her 2006 amendment as well are improper.

---

[4]Plaintiff also states that she included the dismissed reasonable accommodation claim in the First Amended Complaint "only in order to preserve plaintiff's right to appeal the Court's decision."  Id. at 5, 7 n.8.  This argument too reflects a misstatement of federal procedural practice.

Perhaps most outrageous is Plaintiff's explanation for why she filed a third complaint in 2006: in order to avoid losing entirely her hostile work environment claim in the First Amended Complaint due to untimeliness.  <u>See</u> <u>id</u>. at 8.  <u>See also</u> Civil Action No. 03-2428(PLF), R. 64, Plaintiff's Motion for Leave to File a Sur-reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Amended Complaint and Request for a Hearing, at 7 ("If the Court agrees with defendant as to the timeliness of plaintiff's allegations, plaintiff would lose entirely her hostile work environment claims that were in the two EEO [administrative] complaints [EPA No. 2001-0014HQ and EPA No. 2000-0085HQ].")

This, however, is no reason at all.  If all a litigant needed to do in response to a finding of untimeliness in one complaint were to file a second complaint containing the identical claim, there would be no enforcement of statutes of limitations.  The hostile work environment claim set forth in the First Amended Complaint spans a period beginning in 1999, raised in the five administrative complaints, including 2001-0014HQ and 2000-0085HQ, which were dismissed from the administrative process by EPA's Office of Civil Rights on *February 3, 2004*.  <u>See</u> Civil Action No. 03-2428 (PLF), First Amended Complaint, ¶ 76 (March 27, 2006) and Plaintiff's Exhibit 58.  Plaintiff therefore had ninety days to timely file her civil action on the harassment claim. <u>See</u> 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).  The hostile work environment claim in Plaintiff's First Amended Complaint filed March 27, 2006–more than two years later-- is untimely

and nothing about the filing of a third duplicative complaint in 2006 changes that hard fact.

Defendant cannot fathom how Plaintiff finds it acceptable to file so many duplicative civil actions, but respectfully requests that this Court at a minimum narrow this proceeding to its proper scope. For example, as the Third Circuit has noted, when a district court becomes aware that two complaints are "virtually identical" it can stay proceedings in the second action until judgment is entered in the first. Walton v. Eaton Corp., 563 F. 2d at 71-72. The Court can also dismiss the subsequent, duplicative claims. E.g., Zerilli v. The Evening News Association, 628 F. 2d 217 (D.C. Cir. 1980). Further, if the Court agrees with Defendant as to the legal inadequacies of the 2003 Complaint and agrees that dismissal is appropriate, the Court should simultaneously dismiss the 2004 and 2006 Complaints with prejudice on the same substantive grounds or thereafter dismiss the 2004 and 2006 Complaints with prejudice based on law of the case. Finally, as discussed above, the reasonable accommodation claim in the First Amended Complaint and the 2004 Complaint should be dismissed additionally on grounds of collateral estoppel (the prior jury verdict) and law of the case. Coleman-Adebayo v. Leavitt, 400 F. Supp. 2d 257 (2005) and Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132 (D.D.C. 2004).

**3.    Plaintiff's Arguments Related to Her Hostile Work Environment Claim**

Plaintiff, in her opposition memorandum, actually contends that "in accordance with Morgan and Singletary, [she] has filed a fully-exhausted hostile work environment claim that was filed within **180 days** of 'any act' that was part of 'one unlawful

employment practice.' " Id. at 10 (emphasis added).  Plaintiff's ongoing confusion on the law of employment discrimination is evident here as well–if Plaintiff filed the hostile work environment within "180 days," then the hostile work claim was by her own admission untimely.  In the federal sector, the statute of limitations for filing a civil action following an agency's final decision dismissing an administrative complaint is ninety (90) days.  See 42 U.S.C. § 2000e-16( c ); 29 C.F.R. § 1614.407(a).

    Plaintiff's final argument is an attempt to discredit the legal cases cited by Defendant -- e.g., Edwards v. Department of the Army, 708 F.2d 1344, 1345 (8th Cir. 1983),  Keeley v. Small, 391 F.Supp.2d 50-51 (D.D.C. 2005), Gardner v. Tripp County, South Dakota, 66 F.Supp.2d 1094, 1100-1101 (D.S.D. 1998).   Plaintiff cites to a First Circuit case, Noviello v. City of Boston, 398 F.3d 76, 82 (1st Cir. 2005) for the proposition that "a single event, which the court found could have occurred because of retaliation, could also be considered a hostile work environment."  Civil Action No. 06-1731(PLF), R. 13, Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Civil Action No. 06-1731 (PLF)," at 20.

    There are three problems with Plaintiff's argument here–it does not address the central point of the four cases cited by Defendant–that discrete allegations of reprisal should not be used to bootstrap a broader hostile work environment claim.  Second, Plaintiff completely misconstrues Noviello.  Noviello does not hold that "a single event, which the court found could have occurred because of retaliation, could also be considered a hostile work environment," as Plaintiff stated.  Indeed, the lone "single

event" in Noviello was a "solitary act of sexual harassment" on the part of Ms. Noviello's supervisor, which was dismissed due to untimeliness. The retaliatory hostile work environment claim–in sharp contrast–was made up of a lengthy series of pervasive and severe occurrences directed at Ms. Noviello by multiple coworkers, which is plainly inapplicable here.

Third, and most urgently, there is nothing, not one allegation in the instant case that makes Noviello applicable to this case. The actions taken against Ms. Noviello began with her supervisor's assault–forcibly unhooking and ripping off her brassiere, hanging it on the outside mirror of a city-owned van, and bellowing a crude sexual remark to a fellow employee on the street. After Ms. Noviello reported this discriminatory conduct, a large number of her coworkers who were friendly to the supervisor subjected Ms. Noviello to an allegedly retaliatory onslaught of severe and pervasive "indignities." These allegations included gross accusations of misconduct, humiliating actions, threatening actions, actions of a physical nature, and actions that put Ms. Noviello in danger, including nearly being hit by a coworker maliciously driving a van--over a series of six months–at work and at social events related to work. Id. at 82-83. Again, Plaintiff's citation of Noviello as being applicable to the instant case borders on the frivolous.

## CONCLUSION

Taken together, Defendant has articulated multiple, significant grounds for a straightforward dismissal of Plaintiff's three Complaints and entry of judgment for Defendant. Defendant respectfully requests the Court to do precisely that.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /mj
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
.    Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment on Plaintiff's Recent Complaint, Civil Action No. 06-1731(PLF)* was made by the Court's Electronic Case Filing System this 12th day of March, 2007 to:

Michael G. Shaw
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005-4632

mshaw@tpmlaw.com

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney